**CARPENTER LAW GROUP**
TODD D. CARPENTER (234464)
432 West Broadway, 29th Floor
San Diego, California 92101
Phone:        (619) 347-3517
Facsimile:    (619) 756-6990
Todd@Carpenterlawyers.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE LUMOS, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., a Texas corporation, and DOES 1 through 20.<br><br>Defendants. | Case No.:  **'13CV0342 JLS  BGS**<br><br>**CLASS ACTION**<br><br>1.   VIOLATION OF THE FAIR AND ACCURATE CREDIT TRANSACTION ACT; 15 U.S.C. §1681c(g)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jamie Lumos brings this action on behalf of herself and all others similarly situated against Southwest Airlines Co. and states:

### NATURE OF ACTION

1.        Congress amended the Fair Credit Reporting Act ("FRCA") in 2003 through the passage of the Fair and Accurate Credit Transactions Act ("FACTA"). FACTA was enacted to curb identity theft and fraud by requiring businesses and merchants who accept debit cards and credit cards (collectively, "payment cards") for the purchase of merchandise to truncate the *expiration date* and all but the last 5 digits of the payment card number from all payment card receipts electronically printed during the transaction. *See* 15 U.S.C. § 1681c(g)(1)(emphasis added).

2.        Congress enacted FACTA with the intent of helping to prevent the possibility of thieves stealing the identity of another by obtaining one's payment card

number and the expiration date of the payment card. Businesses generally require one's payment card number and the expiration date of that payment card to transact business. Access to both the card number and the expiration date of the card makes it easier for a thief to commit identity theft.

3.     This truncation requirement was specifically intended to protect consumers from the likes of dumpster divers and other would-be perpetrators of identity theft and credit card fraud by making it more difficult to obtain discarded receipts that contain a card owner's entire card number and/or expiration date.

4.     The truncation of the expiration date of the payment card prevents would-be identify thieves from one piece of a card holders' full payment card profile, which includes: the consumer's name, address, payment card number, expiration date, and/or the security pin.

5.     Defendant Southwest Airlines Co. ("Southwest") is the world's largest discount or low cost carrier, headquartered in Dallas, Texas. Southwest was established in 1967, adopting its current name in 1971. Classified as a major carrier, it carries the most domestic passengers of any U.S. airline.

6.     Except for a few years during the 1970s-80s when it operated Boeing 727s, Southwest has solely operated Boeing 737s. As of August 2012, Southwest is the largest operator of the 737 worldwide with over 575 in service, each operating an average of six flights per day.

7.     Southwest has more than 46,000 employees and operates approximately 3,400 flights per day.  As of January 2013, Southwest Airlines has scheduled service to 78 destinations in 39 states.

8.     Despite being a sophisticated merchant, who routinely and in the course and scope of its normal business practices accepts both debit and credit cards for the purchase and sale of airline tickets, Southwest failed to comply with FACTA in that it does not truncate the expiration date of payment cards on the electronically printed

receipts it provided to customers at the point of sale at ticket counters located in airports across the country, and including the ticket counter at the San Diego International Airport, Lingbergh Field during the proposed class period.

9.     As alleged more fully herein, Southwest is aware of the truncation requirements proscribed by 15 U.S.C. § 1681c(g)(1), but willfully disregarded them by printing the entire expiration date of its customers' payment cards on the customer's electronically printed payment card receipts at the point of sale at its ticket counters in several airports across the country, including, but not limited to airports which service Southwest Flights in Phoenix, Las Vegas, San Diego and Nashville.

10.     A "willful" violation of FACTA, 15 U.S.C. §1681c(g)(1), imposes mandatory statutory damages for each violation. The minimum amount of damages is $100.00 per violation up to a maximum of $1,000.00 for each violation.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from Southwest.

12.     This Court has personal jurisdiction over Southwest because Southwest is authorized to do and does business in California.  Southwest has marketed, promoted, and sold its airline travel services in California and Southwest has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible. Further, thousands of retail payment card purchases were transacted within the State of California. Southwest willfully violated 15 U.S.C. §1681c(g)(1) in a systematic, routine basis at its California ticket counter(s), and continues to do so to this day.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Southwest transacts substantial business in this District.

## PARTIES

14.     Plaintiff Jamie Lumos resides in San Diego County, California.  On approximately May 3, 2012, Plaintiff Lumos made a purchase with a payment card at a Southwest ticket counter at the San Diego airport, Lindberg Field. After handing the Southwest employee her payment card, the employee swiped or otherwise entered the payment card information into the Southwest ticketing system and provided Ms. Lumos with a ticket to travel to San Francisco.   After Ms. Lumos completed the purchase transaction, she received her ticket and a copy of the air travel receipt.   The receipt contained, among other things, the last four digits of her credit card number and the four digit expiration date of her credit card. The payment card number was truncated, in accordance with 15 U.S.C. §1681c(g)(1) – meaning, 12 of the 16 digits of her payment card were crossed out (by way of example: "XXXX-XXXX-XXXX-1234) or properly truncated. The remaining four digits were not.  However, her ***entire*** four digit expiration date was electronically printed and un-redacted in violation of 15 U.S.C. §1681c(g)(1).

15.     Defendant Southwest USA, Inc., is a Texas corporation, with its headquarters at 2702 Love Field Drive, Dallas Texas 75235. Southwest, along with its wholly owned subsidiary(s), now serves 97 destinations in 41 states, the District of Columbia, the Commonwealth of Puerto Rico, six near-international countries, and employs approximately 46,000 people. Southwest is a sophisticated merchant which primarily generates sales through its website, but it also routinely accepts credit and debit cards for the payment and purchase of airline travel at ticket counters in several airports across the United States. Southwest is in full compliance with FACTA through its website, but did not comply with it for sales made at its ticket counters in numerous

airports throughout the country during the proposed class period.

## FACTUAL ALLEGATIONS

**History of FCRA and FACTA**

16.     The FCRA was passed in 1970 in part "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." Fair Credit Reporting Act (FCRA), 15 U.S.C.§§ 1681–1681x (2006).  However, as identity theft increasingly affected U.S. consumers through the early 1990s, critics of FCRA were concerned that FCRA did very little, if anything, to prevent identify theft from occurring.

17.     The Fair and Accurate Credit Transactions Act of 2003 ("FACTA") was enacted in part to address the security practices of merchants who accept payment cards (credit and debit). FACTA targets a very narrow problem; the publication of credit card numbers and expiration dates on electronically printed (not handwritten) credit card and debit card receipts.  Congress amended the Fair Credit Reporting Act ("FCRA") in 2003 through passage of the Fair and Accurate Credit Transactions Act ("FACTA"), which focuses on curbing identity theft and credit card fraud. Several provisions within FACTA are specifically intended to combat identity theft and empower consumers to better monitor their credit and financial situations. *See* The Federal Trade Commission's "FTC ISSUES FINAL RULES ON FACTA IDENTITY THEFT DEFINITIONS, ACTIVE DUTY ALERT     DURATION;     APPROPRIATE     PROOF     OF     IDENTITY, http://www.ftc.gov/opa/2004/10/facataidtheft.shtm (last viewed May 9, 2012).

18.     FACTA included provisions that permitted consumers to acquire one free credit report on an annual basis from each of the three major credit reporting agencies, Equifax, Experian, and TransUnion. FACTA also established "fraud alerts," which permit customers to "flag" their credit files if they feel they are at risk of identity theft. *See*

*generally*, 15 U.S.C.§1681c1-2.

19.     Most importantly, FACTA mandated the truncation of vital account information on credit and debit card receipts.

20.     Section 1681c(g)(1) of the FCRA – enacted as part of FACTA – requires businesses to mask credit and debit card numbers and suppress the printing of card expiration dates on electronically printed consumer receipts as follows:

(1)     In general.  Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number *or* **the expiration date** upon any receipt provided to the cardholder at the point of sale or transaction.  *See* 15 U.S.C. § 1681c(g)(1)**(emphasis added).**

(2)     Subsection (g)(2) provides that these requirements **apply only to electronically *printed* receipts**, and do not apply to transactions where the sole means of recording the account number is by handwriting or an imprint of the card. 15 U.S.C. § 1681c(g)(2)(emphasis added).

21.     Any person who ***willfully*** fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of:

(1)     (A) any actual damages sustained by the consumer as a result of the failure or damages of ***not less than $100 and not more than $1,000***; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2)     such amount of punitive damages as the court may allow; and

(3)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. *See* 15 U.S.C. §1681(n) (emphasis added).

22.     A private right of action exists under 15 U.S.C.§1681c(g)[1]

**The Risks of Identify Theft FACTA helps to prevent**

23.     The FTC estimates as many as 9 million Americans have their identity stolen each year.  The FTC recognizes that "theft" and "dumpster diving" are two of the most      prevalent      sources      of      identity      theft.      *See* http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html.     (Last visited on May 4, 2012).

24.     The act of "dumpster-diving," occurs when perpetrators sift through dumpsters and trash bins outside businesses and residences to look for documents and discarded receipts that can divulge a variety of personal information, such as phone numbers, social security numbers, financial account numbers, and credit card numbers.  A popular method of carrying out credit card fraud by this method occurs when the perpetrator finds a discarded pre-approved credit card offer along with the information necessary to activate the card in the victim's name. Victims often do not think twice about throwing away these types of pre-approved offers, as well as bills, credit card statements, and bank statements.  *See* Northwestern Journal of Technology and Intellectual Property (2011), §B3, Paragraphs 18-19.

25.     Perpetrators of identity theft can readily assemble the pieces of a customers' payment card profile (including the payment card number and expiration date), using, among other things: 1) discarded receipts which contain the expiration dates of payment cards; 2) discarded debit card bank account credit card account statements; or 3) other personal documents which contain references to the payment card number.

---

[1] Every court to consider whether a private right of action exists under the section at issue here, 15 U.S.C. § 1681c(g), has decided that it does. *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 969 (C.D.Cal. 2007); *Leowardy v. Oakley, Inc.*, SACV 07-53 CJC, 2007 U.S. Dist. LEXIS 31229 (C.D.Cal. Apr. 10, 2007) (in chambers) (denying motion to dismiss § 1681 c(g) based upon alleged lack of private right of action); *Eskandari v. IKEA U.S., Inc.*, No. SACV 06-1248 JVS, 2007 U.S. Dist. LEXIS 23007, 2007 WL 845948, *2 (C.D. Cal. Mar. 12, 2007); *Aeschbacher v. Cal. Pizza Kitchen*, No. CV 07-215 VBF, 2007 U.S. Dist. LEXIS 34852 (C.D. Cal. Apr. 3, 2007).

26.     Once assembled, identity thieves are able to make "Card-Absent" purchases over the phone or through direct mail with only a limited amount of information from the victim related to their payment card profile, including minimal personal identification information, a payment card number and expiration date.

27.     For example, despite the fact many businesses and merchants require the full credit card number, expiration and security pin of a debit or credit card to complete purchases, several merchants do not require the security pin[2].

28.     Unlike in situations where the payment card is present at the point of sale, "Card-Absent" transactions present identity thieves a multitude of opportunities to exploit their ill-gotten bounties by making illicit purchases.  The growth of the mail order, telephone order (MO/TO), and Internet merchant channels means increasing numbers of merchants are now processing transactions in situations where the card and cardholder are not present—and fraud may be especially difficult to detect.  *See* Exhibit "A", Card Acceptance Guidelines for Visa Merchants; Section 3: Card-Absent Transactions, p. 46. However, Credit Card providers, including Visa, instruct their merchants at a minimum to collect only:  the card account number; the customers' name; the card expiration date as it appears on the card; and the cardholder's statement address.  Conspicuously absent from these minimal requirements is the "pin number" generally located on the back of the card.

29.     In 2006, the FTC commissioned the 2006 Identity Theft Survey Report. As a result of this report, the FTC estimated that  although 50% of identity theft victims do not incur "out of pocket expenses," victims of all types of identity theft spent hours of their time resolving the various problems that result from identity theft, and some victims

---

[2] Security pin, in this context, refers to an additional code, found today on most major credit cards, which is often required to make a card-not-present (e.g. online, over-the-phone) purchase. Different credit card issuers refer to it through a host of remarkably similar acronyms and names, such as Card Verification Value (CVV), Card Verification Code (CVC or CVC2), Card Code Verification (CCV), etc. This additional security measure helps to combat credit card fraud in cases where the perpetrator has only the card owner's name, credit card number, and expiration date off a receipt, as the security code is not usually printed on receipts. However, a variety of fraud methods are able to procure this code, so it is by no means a perfect safeguard. *See* Northwestern Journal of Technology and Intellectual Property (2011), §B3, Paragraph19. *citing, e.g.*, *Security Features*, VISA, http://www.visa.ca/en/merchant/pdfs/security_features.pdf (last visited Aug. 25, 2011).

incurred substantial out-of-pocket expenses,  including lost wages, legal fees, payment of fraudulent debts, and miscellaneous expenses such as notarization, copying and postage. *See*, F.T.C.: 2006 Identity Theft Survey Report, p. 6; http://www.ftc.gov/os/2007/11/SynovateFinalReportIDTheft2006.pdf (last visited on May 15, 2012).

**The Implementation of FACTA and the Effect of the "Clarification Act".**

30.  FACTA was enacted as part the Fair Credit Reporting Act on December 4, 2003. Congress provided that it would take effect in two phases. With respect to cash registers installed on or after January 1, 2005, compliance was required immediately, while registers in use before that date were required to become compliant beginning on December 4, 2006. *See* 15 U.S.C. § 1681c(g)(3).  The truncation requirement was phased in over time to allow large and small businesses to conform to the requirements and update the cash registers and /or Payment Card Industry terminals in service.   Shortly after FACTA took effect in December of 2006, hundreds of class action lawsuits were filed in federal courts alleging violations of §1681c(g).

31.  In 2008, almost five years after the passage of FACTA, Congress enacted the "Credit and Debit Card Receipt Clarification Act" ("Clarification Act").   The new statute added a subsection (d) to Section 616 of the Fair Credit Reporting Act (15 U.S.C. §1681(n)).  The "Clarification Act" was in direct response to the "hundreds of lawsuits" that were filed against merchants after the effective date of FACTA, alleging that merchants' "failure to remove the expiration date was a willful violation" of the statute, even though the account number was properly truncated.  *See*, Clarification Act § 2(a)(4), 122 Stat. at 1565. Congress found that many merchants mistakenly believed that § 1681c(g) would be satisfied solely by truncating the card number and not the expiration date. Id. at § 2(a)(3), 122 Stat. at 1565 (emphasis added).

32.  In 2008, Congress acted to give those merchants a one-time safe harbor, from FACTA compliance through the Clarification Act, which amended FACTA to state that any

merchant who printed an expiration date, but otherwise complied with FACTA, between the dates of December 4, 2004 and June 3, 2008, shall not be deemed in willful noncompliance with § 1681c(g). Id. at § 3(a) (codified at 15 U.S.C. § 1681n(d)), 122 Stat. at 1566.

33.     Importantly, the Clarification Act did not excuse violations on a going forward basis. The printing of a payment card's expiration date after June 3, 2008 is a violation. Specifically, the quoted subsection (d) language applied only to a "person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale transaction between December 4, 2004 and the date of the enactment of this subsection," - which occurred on June 3, 2008.

34.     Critically, Congress did not amend the substantive provision of FACTA so that printing both five digits of the card number and the expiration date would be expressly compliant. It merely said doing so prior to June 3, 2008 would not be "willful non-compliance". This limitation demonstrates such conduct after June 3, 2008 could be "willful non-compliance".

35.     The purpose of the Clarification Act was to provide those merchants and businesses additional time to come into compliance with the truncation requirement for payment card expiration dates.  It essentially moved the effective compliance date from December of 2006 to June 3, 2008.  But it did not remove or in any way alter the mandate of 15 U.S.C. § 1681c(g)(1), requiring all business and merchants to truncate the customer's payment card expiration date on all electronically printed receipts made at the point of the sale.

**Southwest's Willful Violations of FACTA's truncation requirement (15 U.S.C. § 1681c(g)(1)).**

36.     Statutory damages under § 1681n depend on a violation being "willful"[3].  An

---

[3] The Supreme Court defined "willful," as that term is used in §1681n, in *Safeco Insurance Co. v. Burr*, 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), concluding that a practice is willful when "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  The standard set forth in the Supreme Court's decision in *Safeco Insurance Co. of America v. Burr*, which held that willful violations of the Fair Credit Reporting Act (FCRA) are assessed for reckless disregard, applies to all violations of the FCRA (including

1   action is "willful" when the action is not only a violation under a reasonable reading of the

2   statute's terms, but shows that the company ran a risk of violating the law substantially

3   greater than the risk associated with a reading that was merely careless. A willful violation

4   is can be reckless, i.e. something more than negligence but less than knowledge of the

5   law's requirements[4].

6        37.     Southwest was aware of the truncation requirements mandated by FACTA,

7   (15 U.S.C. § 1681c(g)(1).  In fact, it is Southwest's routine custom and business practice to

8   comply with FACTA for sales made through its website. Southwest also truncates twelve

9   of the sixteen digits of customers' payment card receipts at the point of sale at its ticket

10  counters, thereby complying with one part of FACTA's truncation requirements. Yet,

11  despite its knowledge or effort to comply with FACTA on its website and in one aspect at

12  its ticket counters, Southwest willfully violated Plaintiff's and class members' rights to

13  receive payment card receipts with the expiration dates of their payment cards fully

14  truncated when making purchases at Southwest ticket counters.   Southwest violated

15  Section 15 U.S.C. § 1681c(g)(1) by failing to truncate the expiration date of Plaintiff's

16  payment card and those of the proposed class. No objective reading of the statute would

17  lead Southwest to conclude that it is permissible to electronically print the expiration dates

18  of its customers' payment cards on their receipts at the point of sale.

19       38.     Ignorance of the requirements will not excuse Southwest's liability,

20  especially in light of its partial or half-hearted compliance. Further, several pertinent

21  sources were either provided to Southwest or readily available to it which would have

22  instructed the same with respect to the truncation of expiration dates.

23       39.     Southwest accepts Visa and Master Card credit cards and debit cards for

24

25  ---

FACTA); abrogating *Perez v. Trans Union, LLC*, 526 F.Supp.2d 504. *Cortez v. Trans Union, LLC,* C.A.3 (Pa.) 2010,
26  617 F.3d 688.

27  [4] *See Murry v. New Cingular Wireless Services, Inc.* 523 F.3d 719, 726 (7th Cir. 2008)(*citing Safeco Insurance Co. v. Burr* 551 U.S. 47 (2007).

28

payment at all of its ticket counters and through its website.   Southwest is a "Visa Merchant" by virtue of accepting Visa branded credit and debit cards as tender for the payment of air travel tickets. The Visa "Card Acceptance Guidelines for Visa Merchants © 2011" instructs its merchants to:

"Ensure that the Visa account number is suppressed in accordance with Visa rules and local laws and regulations. Visa recommends that all but the last four digits of the account number be suppressed on the cardholder copy of the transaction receipt, unless otherwise required under local law.

***The expiration date should not appear at all on the cardholder copy of the transaction receipt.*** Existing point of sale terminals must comply with these requirements. To ensure that your point of sale terminals are properly set up for account number and expiration date suppression, contact your acquirer."

*See* Exhibit, "A"; Card Acceptance Guidelines for Visa Merchants; Section 1, p. 13; "Suppressed Account Number and Expiration Date".

40.    Further, the FTC publishes a set of guidelines for businesses to assist them in protecting the personal information of consumers.   *See* Exhibit, "B," "Protecting Personal Information: A Guide For Business".   These guidelines instruct:

"The law requires you to shorten—or truncate—the electronically printed credit and debit card receipts you give your customers. You may include no more than the last five digits of the card number, ***and you must delete the expiration date***."

Id. at p. 7.

41.    Southwest's violation (as to Plaintiff) occurred more than three years following the effective date (Jun 3, 2008) of the "Clarification Act".

42.    Upon information and belief and investigation, Southwest violated FACTA at multiple ticket counters and in multiple states.

43.    Visa, Master Card and other credit companies and vendors of credit and

debit card processing machines inform retailers, such as Southwest, of FACTA's requirements.

44.     Southwest competitors and business peers are compliant with the requirements of FACTA.

45.      Despite its sophistication as one of the largest low cost carriers in the world, its knowledge of the FACTA requirements, its attempts to comply with the requirements, its contractual partners' (credit card and debit card companies') mandate(s) that it follow the requirements, Southwest acted willfully noncompliant with FACTA's truncation requirements.

46.     Further, despite the law's initial enactment in 2003, it did not go into effect until December of 2006.  In 2008, the Clarification Act extended the effective date of the FACTA payment card expiration date truncation requirements until June of 2008.  Yet more than 9 years following its enactment, Southwest remained incompliant.  Southwest systematically and routinely violated this law by electronically printing the expiration dates of its customers' payment cards on all payment card receipts generated as a result of purchases made at certain ticket counters in airports throughout the United States, and including San Diego's International airport, Lindbergh Field throughout the class period. Its interpretation of § 1681c(g)(1) – which resulted in it truncating payment card numbers, but electronically printing their expiration dates is objectively unreasonable.

47.     As a result, Plaintiff and the Class members have been damaged in that Southwest has deprived Plaintiff and members of the class of a statutory right mandated by FACTA to receive receipts which have properly truncated their payment card information. As a result of Southwest's willful violation of the statute, Plaintiff and members of the Class are entitled to statutory damages in the amount of $100 to $1,000.00 per violation, punitive damages and attorneys' fees.

## CLASS ALLEGATIONS

48.     Plaintiff brings this action on behalf of herself and all other similarly

situated consumers in the United States pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All customers who, within the applicable statute of limitations, made a purchase at a Southwest Airline ticket counter in the United States and received an electronically printed receipt at the point of sale which did not truncate the expiration date of the customers' payment card.

> Excluded from the Class are Southwest, its parents, subsidiaries, affiliates, officers and directors.

49.     ***Numerosity***.  The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of customers who made a payment card purchase at a Southwest ticket counter and received an electronically printed receipt without a truncated expiration date; and were thereby damaged by Southwest's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

50.     ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Southwest electronically prints customer's receipts at the point of sale without truncating the expiration dates of their payment cards;

(b)     whether the alleged conduct violates FACTA § 1681 et seq;

(c)     whether Defendant's conduct was wifllful;

(d)     whether Plaintiff and Class members are entitled to statutory damages, punitive damages, costs and/or other appropriate remedies, including attorneys' fees.

51.     ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members had their rights violated through the

uniform misconduct described above, were subject to Southwest's violations of FACTA in the same manner and under identical circumstances (receiving an electronically printed receipt following the purchase of an airline ticket with a payment card at a Southwest ticket counter.) Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

52.    **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

53.    **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of its claims against Southwest. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here..

54.    Unless a Class is certified, the class will not be fully compensated for Southwest's statutory violation(s) and will undoubtedly continue to engage in the illegal conduct.

55.    To the extent that any total award of statutory damages on a class-wide basis might be adjudicated as violating the Defendant's Due Process Rights under the

1  United States Constitution, Plaintiff, on behalf of the putative class, expressly requests

2  only those damages fully allowable under the Constitution.

3
                                    **COUNT I**
                        **Violation of 15 U.S.C. § 1681c(g)(1)**
4

5      56.      Plaintiff repeats and re-alleges the allegations contained in the paragraphs

6  above, as if fully set forth herein.

7      57.      Plaintiff brings this claim individually and on behalf of the Class.

8      58.      15 U.S.C. §1681c(g)(1)  requires businesses to truncate credit and debit

9  card numbers and suppress the printing of credit card and debit card expiration dates on

10  electronically printed customer receipts at the point of sale as follows:

11
           "…[N]o person that accepts credit cards for the transaction of business shall
12         print more than the last 5 digits of the card number or the expiration date upon
           any receipt provided to the cardholder at the point of sale or transaction.  *See* 15
13         U.S.C. § 1681c(g)(1).

14     59.      As described herein, Southwest continuously and systematically fails to

15  comply with the requirements imposed on it *See* 15 U.S.C. § 1681c(g)(1) in the manner

16  described herein.

17     60.      Southwest transacts business in the United States and accepts credit cards

18  and/or debit cards for the payment of merchandise at its ticket counters in airports

19  throughout the United States.

20     61.      In transacting its business, Southwest employs electronic cash registers,

21  computers, and/or other machines that permit it to process credit card and debit card

22  payments and transactions. At all times during the class period, its machines which process

23  sales and payment card transactions at the point of sale electronically printed the class

24  members' receipts without truncating their payment card expiration dates. At all times

25  during the class period, Southwest was electronically printing its customers' payment card

26  receipts at the point of sale without truncating the expiration dates of their customers'

27

28

payment cards in violation of 15 U.S.C. § 1681c(g)(1).

62.     On May 3, 2012, Plaintiff engaged in a payment card purchase at a Southwest ticket counter in the San Diego airport, Linbergh Field, in San Diego, California. Upon the conclusion of her transaction at the point of sale, Southwest electronically printed her receipt which contained, among other things, the actual four (4) digit expiration date of her payment card.

63.     As described herein, and all time during the class period, Southwest's actions with respect to the electronic printing of credit card and debit card receipts without truncating the expiration dates for the cards was a willful violation of 15 U.S.C. § 1681c(g)(1).

64.     As described herein, despite repeated notice of FACTA's requirements, its apparent knowledge of the requirements, and its attempts to comply with FACTA's requirements, Southwest willfully violated FACTA in conscious disregard of the rights of Plaintiff and the members of the class thereby exposing Plaintiff and the members of the class to an increased risk of identity theft and or payment card fraud.

65.     As a result of Defendant's willful violations of FACTA, Defendant is liable to Plaintiff and each member of the class in the statutory damage amount of "not less than $100 and not more than $1000" for each violation. 15 U.S.C. §1681n(a)(1)(A).  Plaintiff and the members of the class are entitled to recover costs of suit and their reasonable attorneys' fees. 15 U.S.C. §1681n(a)(3).  Also, Plaintiff and the members of the class are entitled to recover punitive damages. 15 U.S.C. §1681n(a)(2).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and the proposed Class members statutory damages in an

amount of "not less than $100 and not more than $1000" for each violation;

   C.  Awarding Plaintiff and the proposed Class members only an amount of damages permissible under the United States Constitution, in accordance with due process;

   D.  Awarding attorneys' fees and costs;

   E.  Awarding punitive damages according to proof; and

   F.  Providing such further relief as may be just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

DATED:  February 12, 2013    **CARPENTER LAW GROUP**


         s/ Todd D. Carpenter
        Todd D. Carpenter
        432 West Broadway, 29th Floor
        San Diego, California 92101
        Phone:  (619)347-3517
        Facsimile: (619) 756-6990
        Todd@Carpenterlawyers.com

        Attorneys for Plaintiff