1   ERIC A. GROVER (SBN 136080)
    eagrover@kellergrover.com
2   **KELLER GROVER LLP**
    1965 Market Street
3   San Francisco, California 94103
    Telephone:    (415) 543-1305
4   Facsimile:    (415) 543-7861

5   *Attorneys for Plaintiff*
    ROBERT MILLER on behalf of himself and
6   others similarly situated

7   TODD D. CARPENTER (SBN 234464)
    todd@carpenterlawyers.com
8   **CARPENTER LAW GROUP**
    432 West Broadway, 29th Floor
9   San Diego, CA  92101
    Telephone:    (619) 347-3517
10  Facsimile:    (619) 756-6990

11  *Attorneys for Plaintiff*
    JAMIE LUMOS on behalf of herself and
12  others similarly situated

13          **IN THE UNITED STATES DISTRICT COURT**

14          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                  **SAN FRANCISCO DIVISION**

16

17  ROBERT MILLER, on behalf of himself and      Case No. C-12-5978-CRB
    all others similarly situated,               Case No. C-13-1429-CRB
18
                    Plaintiff,                    CLASS ACTIONS
19
            vs.                                   CONSOLIDATED FOR DISCOVERY PURPOSES
20                                                ONLY
    SOUTHWEST AIRLINES CO., a Texas
21  Corporation; and DOES 1 through 20, inclusive, **NOTICE OF MOTION AND MOTION FOR**
                                                  **PRELIMINARY APPROVAL OF CLASS**
22                  Defendants.                   **ACTION; MEMORANDUM OF POINTS**
                                                  **AND AUTHORITIES IN SUPPORT**
23  JAMIE LUMOS, on behalf of herself and
    all others similarly situated,
24                                                Date:       October 11, 2013
                    Plaintiff,                    Time:       10:00 a.m.
25                                                Ctrm:       6, 17th Floor
            vs.                                   Judge:      Hon. Charles R. Breyer
26
    SOUTHWEST AIRLINES CO., a Texas
27  corporation; and DOES 1 through 20, inclusive,
                    Defendants.
28

*Left margin, vertical text:* KELLER GROVER LLP — 1965 Market Street, San Francisco, CA 94103 — Tel. 415.543.1305 | Fax. 415.543.7861

PLEASE TAKE NOTICE that on October 11, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Charles R. Breyer presiding, Plaintiffs ROBERT MILLER and JAMIE LUMOS ("Plaintiffs") will and hereby do move this Court for an order (1) consolidating the above-referenced actions for the purposes of approving the Stipulation of Settlement and Release Between Plaintiffs and Defendant ("Stipulation of Settlement"); (2) preliminarily approving the Stipulation of Settlement; (3) conditionally certifying the proposed Settlement Class; (4) appointing Plaintiffs as Class Representatives; (5) appointing Plaintiffs' Counsel as Class Counsel; (6) approving the designation of the Settlement Administrator; (7) approving and directing the distribution and publication of the Published Notice and Long Form Notice pursuant to the proposed notice plan; and (8) scheduling a fairness hearing for final approval of the Settlement.

The motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Declarations of Eric A. Grover, Daniel F. Gaines and Todd D. Carpenter,  the proposed order, the pleadings and papers filed in this case, and any oral argument this Court permits.  Defendant Southwest Airlines Co. does not oppose this motion.

Dated:  September 17, 2013          **KELLER GROVER LLP**


By:   /s/ *Eric A. Grover*
　　　　 ERIC A. GROVER

*Attorneys for Plaintiff*
ROBERT MILLER and the Proposed Class

Dated:  September 17, 2013          **CARPENTER LAW GROUP**


By:   /s/ *Todd D. Carpenter*
　　　　 TODD D. CARPENTER

*Attorneys for Plaintiff*
JAMIE LUMOS and the Proposed Class

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax. 415.543.7861

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 1

      A.    Procedural History ....................................................................................... 1

      B.    The Parties Reached a Settlement in Both Actions ...................................... 3

III.  THE PROPOSED SETTLEMENT TERMS ........................................................... 4

      A.    Settlement Class and Class Period ............................................................... 4

      B.    Settlement Fund ........................................................................................... 4

      C.    Settlement Payments to the Class Members ................................................ 5

      D.    Defendant's Ongoing Compliance with FACTA ......................................... 6

      E.    Class Notice Procedure ............................................................................... 6

      F.    Claims Administration ................................................................................. 7

      G.    Class Counsel's Attorneys' Fees and Costs ................................................ 7

      H.    Class Representatives' Enhancement Awards .............................................. 7

IV.   ARGUMENT ......................................................................................................... 8

      A.    Preliminarily Approval of the Class Action Settlement is
            Appropriate Under Federal Rules of Civil Procedure Rule 23 ..................... 8

      B.    The Settlement Class Satisfies Federal Rule of Civil
            Procedure 23 for Conditional Certification ................................................. 8

            1.    FRCP 23(a) Class Certification Requirements
                  are Satisfied ....................................................................................... 9

            2.    FRCP 23(b)(3) Requirements for Class Certification
                  are Satisfied ..................................................................................... 11

      C.    The Settlement is Fair, Reasonable, and Adequate ................................... 13

            1.    The Settlement Amount is a Fair Compromise in
                  Light of the Litigation Risks and Uncertainties. ............................. 14

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103

Tel. 415.543.1305 | Fax. 415.543.7861

**TABLE OF CONTENTS**
(continued)

**Page**

2. Sufficient Formal and Informal Discovery Allowed Plaintiffs' Counsel to Calculate Class Damages and Make Informed Decisions Regarding Settlement ..................................... 15

3. The Settlement was the Product of Informed, Non-Collusive, and Arms-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement .......................................................................... 16

4. The Proposed Notice and Claims Process Are Reasonable ............................................................................ 17

5. Plaintiffs Will Submit a Separate Application for the Requested Attorneys' Fees, Costs, and Expenses ..................................... 20

6. The Settlement Provides Reasonable Service Awards for the Class Representatives ...................................... 20

D. A Final Approval Hearing Should be Scheduled ................................................. 21

V. CONCLUSION .............................................................................................. 22

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................ 11, 13

*Amchen Products Inc. v. Woodward,*
521 U.S. 591 (1997) ........................................................................................................ 13

*Churchill Village, L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ......................................................................................... 14

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) ....................................................................................... 21

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ........................................................................................................ 17

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ................................................................................. passim

*In re Beef Indus. Antitrust Litig.,*
607 F.2d 167 (5th Cir. 1979) ......................................................................................... 13

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) ......................................................................................... 15

*In re Syncor ERISA Litig.,*
516 F.3d 1095 (9th Cir. 2008) ....................................................................................... 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
244 F.3d 1152 (9th Cir. 2001) ................................................................................. 11, 12

*Lumos v. Southwest Airlines Co.,*
United States District Court for the Northern District of California
Case No. 3:13-cv-1429-CRB .................................................................................... 1, 2

*Lumos v. Southwest Airlines Co.,*
United States District Court for the Southern District of California
Case No. 3:13-cv-0342-JLS-BGS .................................................................................. 2

*Mendoza v. United States,*
623 F.2d 1338 (9th Cir. 1980) ....................................................................................... 17

*Miller v. Southwest Airlines Co.,*
United States District Court for the Northern District of California
Case No. 3:12-cv-5978-CRB .................................................................................... 1, 2

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

# TABLE OF AUTHORITIES
### (continued)

**Page**

### Federal Cases (con't)

*Mirfasihi v. Fleet Mortgage Corp.*,
  356 F 3d 781 (7th Cir. 2004) ................................................................. 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................ 17

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................... 13, 15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................ 12, 17

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ................................................................ 17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................ 20

*Valentino v. Carter-Wallace*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................ 12

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ................................................................ 19

*Wang*, 709 F.3d at 835 ............................................................................. 11

### State Cases

*Ikonen v. Hartz Mountain Corp.*,
  122 F.R.D. 258 (S.D. Cal. 1988) ............................................................. 9

*Battle v. Liberty National Life Ins. Co.*,
  770 F.Supp. 1499, n.47 (M. D. Ala. 1991) ............................................... 19

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ......................................................... 16

*Carter v. Anderson Merchandisers, LP*,
  No. EDCV 07-0025-VAP, 2010 WL 1946784
  (C.D. Cal. May 11, 2010) ...................................................................... 16

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**State Cases (con't)**

*Elkins v. Equitable Life Ins. of Iowa*,
    No. CivA96–296–Civ–T–17B, 1998 WL 133741
    (M.D. Fla. Jan. 27, 1998) ........................................................................... 13

*Glass v. UBS Fin. Servs., Inc.*,
    No. C-06-4068 MMC, 2007 WL 221862
    (N.D. Cal. Jan. 26, 2007) ........................................................................... 15

*In Re S. Ohio Corr. Facility*,
    175 F.R.D. 270 (S.D. Ohio 1997) .............................................................. 20

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ................................................................ 20

*Lewis v. Starbucks Corp.*,
    No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690
    (E.D. Cal. Sept. 11, 2008) .......................................................................... 16

*McNamara v. Bre-X Minerals Ltd.*,
    214 F.R.D. 424 (E.D. Tex. 2002) ............................................................... 21

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) ....................................................... 20, 21

*Romero v. Producers Dairy Foods, Inc.*,
    235 F.R.D. 474 (E.D. Cal. 2006) ................................................................. 9

*Satchell v. Fed. Exp. Corp.*,
    No. C 03-2659 SI, 2007 WL 1114010
    (N.D. Cal. Apr. 13, 2007) ........................................................................... 16

*Strube v. Am. Equity Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ............................................................... 13

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ........................................................ 20, 21

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ............................................... 10

*Wren v. RGIS Inventory Specialists*,
    No. C–06–05778 JCS, 2011 WL 1230826
    (N.D. Cal. April 1, 2011) ...................................................................... 14, 16

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Statutes**

15 United States Code
§ 1681c(g) ........................................................................................................ 1, 2
§ 1681n ...................................................................................................... 2, 10, 12, 13

**Rules**

Federal Rules of Civil Procedure
Rule 23 ............................................................................................................. 8
Rule 23(a) .................................................................................................. 8, 9, 10
Rule 23(a)(1) .................................................................................................... 9
Rule 23(a)(1)-(4) .............................................................................................. 8
Rule 23(a)(4) .................................................................................................. 10
Rule 23(b) ......................................................................................................... 8
Rule 23(b)(3) ........................................................................................ 9, 11, 12, 13
Rule 23(b)(3)(A)-(D) ....................................................................................... 12
Rule 23(b)(3)(A), (B) and (C) ......................................................................... 13
Rule 23(b)(3)(D) ............................................................................................. 13
Rule 23(c)(2)(B) .............................................................................................. 18
Rule 23(c)(3) ................................................................................................... 17
Rule 23(e) ....................................................................................................... 1, 8
Rule 23(e)(2) .............................................................................................. 8, 13

**Treatises**

4 Newberg on Class Actions (4th ed. 2012)
§ 11:25 ........................................................................................................... 21

Manual for Complex Litigation (4th ed. 2004),
§ 21.61 ............................................................................................................. 8

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In two class action lawsuits, Plaintiffs ROBERT MILLER and JAMIE LUMOS ("Plaintiffs" or "Named Plaintiffs") sued Defendant SOUTHWEST AIRLINES CO. ("Southwest" or "Defendant") for violations of the Fair and Accurate Credit Transactions Act ("FACTA") on behalf of themselves and putative classes of individual consumers.[1]   Plaintiffs allege that Southwest violated FACTA, in particular 15 U.S.C. § 1681c(g), by willfully printing the credit and debit card expiration date on electronically printed receipts provided to card holders.

Plaintiffs and Defendant (the "Parties") have reached an agreement to resolve all the claims asserted in the two actions (the "Settlement"), all of the terms of which are set forth in the Stipulation of Settlement and Release Between Plaintiffs and Defendant ("Stipulation of Settlement") attached as Exhibit C to the Grover Declaration.   Plaintiffs now move for preliminary approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and respectfully request that the Court (1) consolidate the above-referenced actions for the purposes of approving the Stipulation of Settlement; (2) preliminarily approve the Stipulation of Settlement; (3) conditionally certify the proposed settlement Class; (4) appoint Plaintiffs and their Counsel as Class Representatives and Class Counsel, respectively; (5) approve Rust Consulting, Inc. as the Settlement Administrator, (6) approve and direct the distribution and publication of the Long Form Notice and Published Notice pursuant to the proposed notice plan; and (7) schedule a fairness hearing for final approval of the Settlement.

### II.   BACKGROUND

#### A.   Procedural History

On October 17, 2012, Plaintiff Robert Miller brought a putative class action (the "First Action") captioned *Miller v. Southwest Airlines Co.*, No. RG12652437, in Alameda County

---

[1] The operative complaint in *Miller v. Southwest Airlines Co.*, Case No. 3:12-cv-5978-CRB, is attached to the Declaration of Eric A. Grover submitted in support of this motion ("Grover Decl.") as Exhibit A.   The operative complaint in *Lumos v. Southwest Airlines Co.,* Case No. 3:13-cv-1429-CRB, is attached to the Grover Declaration as Exhibit B.   The two actions are referred to in this brief collectively as the "Actions."   The Actions were consolidated for discovery purposes.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

Superior Court. Defendant removed the First Action to the United States District Court for the Northern District of California on November 26, 2012, where it was assigned Case No. 3:12-cv-5978-CRB. Ex. C at ¶ 1; Grover Decl. at ¶ 5 Ex. A (operative *Miller* complaint).

On February 12, 2013, Plaintiff Jamie Lumos brought a putative action (the "Second Action") captioned *Lumos v. Southwest Airlines Co.,* United States District Court for the Southern District of California Case No. 3:13-cv-0342-JLS-BGS, against Defendant. Ex. C at ¶ 2; Grover Decl. at ¶ 6, Ex. B (operative *Lumos* complaint). On March 25, 2013, the Second Action was transferred to the United States District Court for the Northern District of California and assigned Case No. 3:13-cv-1429-CRB. Ex. C at ¶ 7. On April 26, 2013, the Court ordered the First and Second Actions consolidated for discovery purposes. Ex. C at ¶ 8; Grover Decl. at ¶ 7.

The Actions allege that Defendant violated FACTA, 15 U.S.C. § 1681 (c)(g), by willfully printing the credit and debit card expiration date on electronically printed receipts provided to individual consumers. Ex. C at ¶¶ 1, 2; Grover Decl. at ¶¶ 5-6, Ex. A (operative Miller Complaint); Ex. B (operative Lumos Complaint). FACTA prohibits any retailer that accepts credit and/or debit cards (collectively "credit cards") from printing "the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681 (c)(g). In the Actions, Plaintiffs seek statutory damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1681n based on allegations that Southwest willfully violated FACTA by intentionally or recklessly disregarding the statute's requirements. *See* Ex. A (operative *Miller* Complaint); Ex. B (operative *Lumos* Complaint).

The FACTA truncation requirements at issue in the Actions apply only to individual consumer transactions, as opposed to transactions made by or for a business. *See* 15 U.S.C. § 1681(c)(g). From October 17, 2007 through January 25, 2013, Defendant estimates that a total of between 880,000 and 2,200,000 relevant credit and debit card purchases or transactions occurred at its airport ticket counter and cargo counters that could have resulted in a printed receipt to customers. Ex. C at ¶ 4. Plaintiffs allege that FACTA's truncation requirements were violated for those purchases or transactions made by individual consumers. Based on historical data, Defendant estimates that approximately one-half of these purchases or transactions were made by

consumers and the other half by business customers not covered by FACTA.  Ex. C at ¶ 4. Because many individual consumers made more than one purchase or transaction during the Class Period (as defined in paragraph 20 of the Stipulation of Settlement), the Parties do not believe that the Settlement Class (as defined in paragraph 42 of the Stipulation of Settlement) exceeds one million individual consumers, and is likely substantially less. Ex. C at ¶ 4; Grover Decl. at ¶ 15.

Defendant has vigorously denied all of the allegations in their entirety.  To date, no class has been certified and no court has made any findings that Defendant engaged in any wrongdoing or in any wrongful conduct or otherwise acted improperly or in violation of any state law, rule or regulation, with respect to the issues presented in the Actions. Ex. C at ¶ 11; Grover Decl. at ¶ 9.

Plaintiffs and Defendant engaged in formal discovery as well as informal discovery prior to engaging in settlement discussions.  Plaintiffs propounded numerous written discovery requests, including interrogatories, requests for admission, and document requests.  Defendant also propounded document requests and responded to some Plaintiffs' documents requests, producing over 2,000 pages of documents.  Plaintiffs further requested and received relevant documents from third-parties Visa and Chase Paymentech. Grover Decl. at ¶ 10.

Defendant was in the process of responding to the remaining written discovery requests and preparing a voluminous document production when, in an effort to avoid protracted and costly litigation, the Parties began discussing the possibility of settlement.  In preparation for mediation, the Parties exchanged additional informal discovery.  Grover Decl. at ¶¶ 11-12.

**B.     The Parties Reached a Settlement in Both Actions**

In an effort to avoid protracted and costly litigation, the Parties began discussing the possibility of settlement and exchanged informal discovery that enabled the Parties to engage in informed, arms'-length negotiations of possible settlement alternatives.  Grover Decl.at  ¶ 12.  On June 24, 2013, the Parties engaged in a formal mediation session with respected mediator and retired U.S. Magistrate Judge, the Hon. Leo S. Papas, and reached a settlement of both Actions subject to approval of the Court.  *Id.*; Ex. C at ¶ 10.

The Parties entered into a more detailed, formalized settlement agreement to submit to the Court for preliminary and final approval.  All of the terms of the Parties' Settlement are set forth in

the Stipulation of Settlement.   Grover Decl. at ¶ 12, Ex. C.   Plaintiffs now seek the Court's preliminary approval of the Settlement.

## III.   THE PROPOSED SETTLEMENT TERMS

### A.   Settlement Class and Class Period

The Stipulation of Settlement defines the Settlement Class as follows:

> All individuals who used a credit card or debit card to complete a purchase or transaction at a Southwest airport ticket counter or cargo counter resulting in an electronically printed receipt between October 17, 2007 and January 25, 2013 (the "Settlement Class").

Ex. C at ¶¶ 42, 51.

The Settlement Class excludes business customers who are not covered by FACTA. *Id.* The Settlement Class further excludes current employees of Defendant or the Court or its staff. *Id.* The "Class Period" is defined as the period October 17, 2007 through January 25, 2013, inclusive.   *Id.*   The members of the Class are referred to in this memorandum as the "Settlement Class members."   Based on information from Defendant's records, the Parties do not believe that the Settlement Class exceeds one million individual consumers, and likely has substantially fewer members.  Ex. C at ¶ 4.

### B.   Settlement Fund

The proposed Settlement provides a fair resolution of the FACTA claims.   The Settlement Class members who file valid claims will obtain meaningful monetary benefits on terms that Plaintiffs believe to be fair, reasonable and adequate.  Grover Decl. at ¶¶ 16-18, 26-27; Declaration of Daniel F. Gaines ("Gaines Decl.") at ¶ 6.

The Settlement requires Defendant to pay $1,800,000 (the "Settlement Fund") to settle the Actions. Ex. C at ¶ 57.  Subject to the Court's approval, the Settlement Fund will be used to cover all payments to Settlement Class members, the cost of administering the settlement, attorneys' fees and costs, and the named Plaintiffs' enhancement awards.  *Id.*

The Parties estimate that, after deducting the administration costs, attorneys' fees and costs, and modest enhancements for the named Plaintiffs, all of which are subject to the Court's approval, approximately $1,132,053 will be available for distribution on a pro rata basis to the

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

1   Settlement Class members who file valid claims. Ex. C at ¶¶ 57, 59. All of the Settlement Fund

2   will be paid out; there is no reversion of any amount to Defendant. Ex. C at ¶ 59(e).

3        **C.    Settlement Payments to the Class Members**

4        Pursuant to the Stipulation of Settlement, Class Members will be paid from the Net

5   Settlement Fund, which consists of the $1,800,000 Settlement Fund minus the Court-approved

6   attorneys' fees and costs, administration costs, and the named Plaintiffs' enhancement awards.

7   Ex. C at ¶¶ 57, 59. The Parties estimate that the Net Settlement Amount will be approximately

8   $1,132,053. Ex. C at ¶ 57.

9        The Stipulation of Settlement provides that Settlement Class members who file a valid

10   claim and do not opt out of the settlement will receive settlement payments equal to a pro rata

11   share of the Net Settlement Amount. Ex. C at ¶ 59 (a).

12        Based on claims rates in other similar cases, the range of expected recovery per Settlement

13   Class member who submits a valid Claim Form is estimated at between $25 and $200, or more.

14   The actual amount paid out will depend on the number of Class Members who submit valid Claim

15   Forms.

16        The Settlement Class members who file a valid claim and receive a settlement check will

17   have 90 calendar days from the date of their check to negotiate or deposit the check. Ex. C at

18   ¶ 59(d).   If, after expiration of the 90-day period, any settlement checks are not cashed, such

19   monies will be held in the Net Settlement Fund for 10 additional days then will be donated to the

20   Identity Theft Resource Center, a non-profit entity which provides consumer and identity

21   theft victim support as well as public education, and advises governmental agencies,

22   legislators, law enforcement, and businesses about the problem of identity theft.[2] Ex. C at

23   ¶ 59(d). No money from the Settlement Fund shall revert to Southwest. *Id.* at ¶ 59(e).

24   / / /

25   / / /

26

27     [2] Additional information concerning the Identify Theft Resource Center can be found at

28   www.idtheftcenter.org.

*Left margin:* **KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**D.     Defendant's Ongoing Compliance with FACTA**

As of October 30, 2012, all of Defendant's electronically printed receipts resulting from purchases or transactions at airport ticket counters have complied with FACTA's truncation requirements.  Ex. C at ¶ 60.  And, as of January 25, 2013, all of Defendant's electronically printed receipts resulting from purchases or transactions at cargo counters have complied with FACTA's truncation requirements.  *Id.*  As part of the Settlement, Defendant has agreed to continue to abide by FACTA's truncation requirements.  *Id.*

**E.     Class Notice Procedure**

The Stipulation of Settlement provides a class notice procedure involving multiple methods of reaching the Settlement Class.  The Parties have agreed that notice to class members will be given in the following ways:

1)     a Published Notice (see Stipulation of Settlement Exhibit B) in USA Today, a newspaper with national publication, on two separate occasions;

2)     an email notice to those consumers for whom Southwest has of an email address, which Southwest estimates to be approximately 65% of all individual and business consumers who made a credit or debit card purchase at an airport ticket counter during the Class Period; and

3)     a dedicated website to be published online at the URL www.SouthwestFACTASettlement.com (or a similar name if that one is not available), which, among other information, will include downloadable versions of the Stipulation of Settlement, Long Form Notice, Claim Form, Opt Out Form and other relevant documents.

Ex. C at ¶ 61 (see Stipulation of Settlement Exhibits A (Claim Form), B (Published Notice), C (Long Form Notice) and D (Opt Out Form); Grover  Decl. at ¶ 23.  All such forms are subject to this Court's approval.

All of the proposed notice methods explain the terms of the Settlement and how to submit a claim, object to the Settlement or request exclusion from the Settlement.  Ex. C at ¶ 61. Settlement Class members will be permitted to either complete the Claim Form online through the Settlement Website or print the Claim Form from the Settlement Website and submit a completed copy by mail.  Settlement Class members will have 90 calendar days from

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

the date that the last Published Notice is made to complete their online Claim Forms or postmark their hardcopy Claim Forms.   Ex. C at ¶ 56 (*see also*, Stipulation of Settlement Exhibit A). Settlement Class members will have 90 days from the date that the last Published Notice is made to request for exclusion by postmarking an Opt-Out Form.   Ex. C at ¶ 66 (*see also* Stipulation of Settlement Ex. D).   A specific date will be provided in the notice materials informing the Settlement Class members of the exact deadline.  *See* Ex. C at ¶ 61.   Settlement Class members who object to the settlement also will have 90 days from the date that the last Published Notice is made  to file their written objection with the Court and serve the objection on Plaintiffs' Counsel and Defendant's counsel.  Ex. C at ¶ 67.

### F.      Claims Administration

The Parties have selected Rust Consulting, Inc. to serve as the Settlement Administrator. Ex. C at ¶¶ 41, 53.  The Settlement Administrator will, among other things, establish a toll-free number and provide caller support, establish a settlement website, arrange for published notice, provide email notification to Settlement Class members, oversee the claims process, and issue and mail settlement checks.  Ex. C at ¶ 54.  The Stipulation of Settlement estimates the cost of claims administration at $194,974.  *Id.*

### G.      Class Counsel's Attorneys' Fees and Costs

The Stipulation of Settlement provides that Plaintiffs may seek attorneys' fees not to exceed $450,000 and costs and expenses not exceed $15,000.   Ex. C at ¶ 63.  Those amounts are intended to compensate Class Counsel for all of the work already performed in litigating the Actions and the work remaining to be performed by Class Counsel in documenting the settlement, securing approval of the settlement, making sure that the settlement is fairly administered and implemented, and obtaining dismissal of the action and to reimburse Class Counsel's out-of-pocket costs incurred in the litigation of the Actions.  *Id.*  Class Counsel will make a separate application for attorneys' fees and costs.  *Id.*

### H.      Class Representatives' Enhancement Awards

The Stipulation of Settlement provides for modest enhancement awards for each of the named Plaintiffs and proposed class representatives, subject to the Court's approval.   Ex. C at

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

¶ 64.   Plaintiffs Miller and Lumos will request enhancement awards of $5,000 each.  *Id.*  This request will be the subject of a separate application supported by evidence of the time spent, assistance provided, and risks incurred by the named Plaintiffs for the benefit of the Class.  Grover Decl. at ¶¶ 34-35; Declaration of Todd Carpenter ("Carpenter Decl.") at ¶ 6.

## IV.  ARGUMENT

### A.  Preliminarily Approval of the Class Action Settlement is Appropriate Under Federal Rules of Civil Procedure Rule 23

A certified class action may not be dismissed, compromised or settled without approval of the Court.  *See* Fed. R. Civ. P. 23(e).  Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.  *Manual for Complex Litigation* (4th ed. 2004), § 21.61.  The decision to approve or reject a proposed settlement is committed to the sound discretion of the court.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  A decision approving a class action settlement may be reversed only upon a strong showing of clear abuse of discretion.  *Id.*

Federal Rule of Civil Procedure 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a) and (b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).  Here, both of these requirements for preliminary approval of this class action settlement are satisfied.

### B.  The Settlement Class Satisfies Federal Rule of Civil Procedure 23 for Conditional Certification

Rule  23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Fed. R. Civ. P. 23(a)(1)-(4).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).  All of these requirements are met here.[3]

### 1.   FRCP 23(a) Class Certification Requirements are Satisfied

#### (a)   *The Class is Sufficiently Numerous*

The numerosity prerequisite demands that the class be large enough that joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least 40 members.  *See e.g.*, *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 class members satisfies numerosity); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006) (same).  Based on its records, Defendant estimates that, during the Class Period, a total of between 880,000 and 2,200,000 relevant credit and debit card purchases or transactions occurred at its airport ticket counter and cargo counters that could have resulted in a printed receipt to customers. Ex. C at ¶ 4.  Defendant estimates that approximately one-half of these purchases or transactions were made by individual consumers.  Because many individual consumers made more than one purchase or transaction during the Class Period, the Parties do not believe that the Settlement Class exceeds one million individual consumers, and is likely substantially less.  Even if the Settlement Class were only ten percent of that amount, the number of class members would be much too numerous for joinder to be practicable.  Ex. C at ¶ 4; Grover Decl.  at ¶ 30.

#### (b)   *Commonality is Satisfied*

The commonality prerequisite for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively." *Hanlon*, 150 F.3d at 1019. To satisfy the commonality requirement of Rule 23(a), the plaintiff must assert at least one

---

[3] Defendant has stipulated to the certification of the proposed class and appointment of the proposed class representatives and Class Counsel for purposes of settlement approval only. Ex. C at ¶ 51.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

1  common contention that is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 131

2  S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  In this case, all putative class members share two

3  common legal questions – whether Southwest violated FACTA by printing the expiration date on

4  customer receipts, and whether that violation was willful.  Grover Decl. at ¶ 31.  Any factual

5  variations among class members, such as differences in the number of transactions they engaged

6  in, which credit or debit cards they used, or what airport or cargo center they visited, have no

7  bearing on these common legal questions.  All class members share the common interest of

8  determining whether the same receipt-printing practice was lawful and whether they are entitled to

9  statutory damages for Defendant's allegedly willful violations.

10             **(c)      *Plaintiffs' Claims are Typical of Those of the Putative Class***

11             The typicality prerequisite of Rule 23(a) is met if the named plaintiff's claims "are

12  reasonably co-extensive with those of absent class members; they need not be substantially

13  identical." *Hanlon*, 150 F.3d at 1020.  Here, typicality is satisfied because the Plaintiffs' claims

14  are the same as the claims brought by Settlement Class members.  Plaintiffs and all other

15  Settlement Class members allege the same injury and violation of their legal rights resulting from

16  the same course of conduct, the printing of too much information on credit or debit card receipts.

17  Plaintiffs and all other Settlement Class members also seek the same relief, specifically, statutory

18  damages under 15 U.S.C. § 1681n.  The Actions are based on conduct that is not unique to

19  Plaintiffs, but on a course of conduct that is common to all Settlement Class members.  Grover

20  Decl. at ¶ 32.  Plaintiffs' claims, therefore, are typical of the class.

21             **(d)      *Plaintiffs and Their Counsel Will Fairly and Adequately***
22                      ***Represent the Class***

23             The adequacy prerequisite permits class certification only if the "representative parties

24  will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This means

25  that proposed class representatives and their counsel cannot have conflicts of interest with the class

26  and must vigorously prosecute the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  No

27  conflicts of interest between Plaintiffs and Settlement Class members exist in this case.  Indeed,

28  / / /

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1   given the similarity of the claims asserted and remedies sought by Settlement Class members in

2   this case, it is hard to imagine how there could be any conflicts.

3        Moreover, this case has been prosecuted with zeal and competence by Plaintiffs' Counsel.

4   Nor can anyone dispute that Plaintiffs' counsel, who have substantial class action experience and

5   experience litigating FACTA cases, can adequately represent the class.  *See Local Joint Exec. Bd.*

6   *of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)

7   (adequacy established by mere fact that counsel were experienced practitioners).  Grover  Decl. at

8   ¶¶ 2-4, 16, 33; Gaines Decl. at ¶¶ 2-6; Carpenter Decl. at ¶¶ 1, 7-8.  Accordingly, Plaintiffs and

9   their Counsel have and will adequately represent the settlement Class.

10        **2.   FRCP 23(b)(3) Requirements for Class Certification are Satisfied**

11        Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate

12  over any questions affecting only individual members" and that a class action is "superior to other

13  available methods for fairly and efficiently adjudicating controversy."  This analysis focuses on

14  "the relationship between the common and individual issues" and "whether proposed classes are

15  sufficiently cohesive to warrant adjudication by representation."  *Wang*, 709 F.3d at 835 (internal

16  quotations omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  In other

17  words, courts must determine whether the focus of the proposed class action will be on the actions

18  and conduct of the defendants rather than the behavior of individual class members.  *Hanlon*, 150

19  F.3d at 1022-23.

20        **(a) *Predominance of Common Questions***

21        Here, whether Southwest violated FACTA intentionally or recklessly (which suffices for

22  willfulness) is the central issue that will determine its liability to the class. That common issue and

23  the associated common legal questions clearly predominate over any potential individualized

24  issues.  Grover Decl. at ¶ 31.

25        **(b) *A Class Action is the Superior Method of Adjudication***

26        The class action procedure is a superior method of adjudication compared to a multitude

27  of individual suits.

28  / / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.   "[I]f a comparative evaluation of other procedures reveals no other realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied."  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001) (citations omitted)*; see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330.  244 F.3d at 1163.  Here, class members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation.  15 U.S.C. § 1681n.  As in *Culinary/Bartender Trust Fund*, "this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually."  *Id.* at 1163, quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  *Culinary/Bartender Trust Fund* clearly dictates that the superiority requirements of Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion.  Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  However, when a court reviews a class action settlement, the fourth factor does not apply.  In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem*

/ / /

*Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997).   The remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, Settlement Class members have no particular interest in individually controlling the prosecution of separate actions.   Statutory damages cannot exceed $1,000.   15 U.S.C § 1681n. Plaintiffs do not allege that any class members suffered actual economic loss, and any who believe they did can opt out of the settlement if they wish to pursue actual damages.   Second, all pending FACTA lawsuits against Southwest are now before this Court.   Finally, it is desirable to concentrate the issues in this forum because noncompliant receipts were printed at airports and cargo centers throughout California, and Plaintiffs are California residents.

Moreover, the parties have reached a Settlement. "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, No. CivA96–296–Civ–T–17B, 1998 WL 133741, at * 19 (M.D. Fla. Jan. 27, 1998); *see also*, *Strube v. Am. Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of settlement.").   And although manageability is not a concern in the settlement context, *Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems, see Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial.")."), Plaintiffs are unaware of any issues that would render unmanageable the adjudication of Plaintiffs' class claims.   Accordingly, the class action is the superior method for adjudication the claims in this action.

### C.    The Settlement is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).   In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "reflects all the normal perils of litigation as well as the additional uncertainties inherent in complex class action." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979).   Included in this analysis are considerations of  "(1) the strength of the plaintiffs' case;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

(2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), citing *Hanlon*, 150 F.3d at 1026.

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. April 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008).

Applying these factors to this case, it is clear that the proposed settlement is fair, reasonable, and adequate.

### 1. The Settlement Amount is a Fair Compromise in Light of the Litigation Risks and Uncertainties.

The proposed settlement results in a meaningful monetary benefit to all Settlement Class members who file valid claims. Based on claims rates in similar cases, Class Members who submit claims should expect to receive anywhere from $25 to $200, or more. A similar case before this Court with a class of a similar size resulted in individual settlement payments of $340. Grover Decl. at ¶ 16, Exs. D and E.

This monetary value of the proposed Settlement represents a fair compromise given the litigation risks and uncertainties presented by continued litigation. Grover Decl. ¶¶ 16-18, 26-27. Although Southwest did not dispute that it in fact printed prohibited information on customer receipts, Southwest strongly and completely denied that the violation was willful. The Parties therefore faced complicated legal issues concerning the interpretation of FACTA and the requirements for a "willful" violation of FACTA. Grover Decl. at ¶ 27.

Absent settlement, Plaintiffs' Counsel anticipate a vigorous and lengthy challenge to both class certification and the merits of Plaintiffs' claims. Grover Decl. ¶¶ 26-27. While Plaintiffs'

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1   Counsel remain confident that Plaintiffs would prevail on the class claims herein, continued

2   litigation would be costly, time consuming, and uncertain.  *Id.*  Plaintiffs would still have to

3   litigate class certification, establish class-wide liability, and then prove up various issues regarding

4   damages.  *Id.*  Such efforts would likely take many months, and necessitate expert witness

5   testimony, as well as other costs, risks, and potential delays.  *Id.*  Appellate proceedings could

6   further delay and jeopardize recovery.  *Id.*  By contrast, the Settlement ensures timely relief and

7   substantial recovery that Plaintiffs contend are owed to the proposed Settlement Class.  *Id.*

8          Moreover, it is well established that settlement offers that constitute only a fraction of the

9   potential recovery do not preclude a court from finding that the settlement offer is fair.  *See*

10  *Hanlon*, 150 F.3d at 1027; *Officers of Justice*, 688 F.2d at 628.  Accordingly, district courts have

11  found that settlements for substantially less than the plaintiffs' claimed damages were fair and

12  reasonable, especially when taking into account the uncertainties involved in litigation.  *See e.g.,*

13  *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26,

14  2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding settlement of wage and hour class action for

15  25% to 35% of the claimed damages to be reasonable).  Here, it is expected that the pro rata

16  settlement payments for those Settlement Class members who file valid claims likely will be

17  within the range of the statutory damages that would have been available if Plaintiffs succeeded in

18  proving Southwest's liability at trial.  Grover Decl. at ¶ 18.  The expected recovery amounts, in

19  light of the litigation risks, uncertainties, and delays, are fair, reasonable, and adequate.  Grover

20  Decl. at ¶ 16-18, 26-27.

21                    **2.   Sufficient Formal and Informal Discovery Allowed Plaintiffs' Counsel
                            to Calculate Class Damages and Make Informed Decisions Regarding**
22                         **Settlement**

23         Extensive formal discovery is not essential to a class action settlement, however, counsel

24  must be able to make informed decisions about the settlement.  *In re Mego Fin. Corp. Sec. Litig.*,

25  213 F.3d 454, 459 (9th Cir. 2000) ("[i]n the context of class action settlements, formal discovery is

26  not a necessary ticket to the bargaining table where the parties have sufficient information to make

27  an informed decision about settlement.") (internal quotations omitted); *Glass*, 2007 WL 221862 at

28  **4-5 (approving settlement of wage and hour class action despite the absence of any formal

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

1    discovery).    In these Actions, the Parties conducted both formal discovery and exchanged

2    additional informal discovery prior to mediation.    Grover Decl. at ¶¶ 10-12, 15.    Prior to

3    mediation, Defendant provided responses to formal interrogatories and document production

4    requests, which included estimates regarding the number of credit and debit card purchases and

5    transactions at airports and cargo centers during the Class Period and estimates of the number of

6    individual consumers/customers who engaged in those transactions.  *See id.*

7          The information exchanged through discovery permitted Plaintiffs to evaluate the

8    strengths and weaknesses of the class claims, and negotiate a fair, reasonable, and adequate

9    settlement.  *See Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at

10   *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery

11   allowed the parties to form a clear view of the strengths and weaknesses of their cases"); *Boyd v.*

12   *Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

###         3.    The Settlement was the Product of Informed, Non-Collusive, and Arms-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.

15         Courts routinely presume a settlement is fair where it is reached through arm's-length

16   bargaining.  *See Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action

17   settlement where parties reached agreement after several months of negotiation and the record

18   contained no evidence of collusion); *Wren*, 2011 WL 1230826, at *14 (finding that settlement

19   reached after two mediation sessions before an experienced and retired judge was reached in a

20   "procedurally sound manner and that it was not the result of collusion or bad faith by the parties or

21   counsel"); *see also Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D.

22   Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process

23   confirms that the settlement is non-collusive."); *Carter v. Anderson Merchandisers, LP*, No.

24   EDCV 07-0025-VAP, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (citing *Satchell*).

25   Furthermore, where counsel are well-qualified to represent the proposed class in a settlement

26   based on their extensive class action experience and familiarity with the strengths and weakness of

27   the action, courts find this factor to support a finding of fairness.  *Wre*n, 2011 WL 1230826, at

28   *10; *Carter*, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable weight.").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

Here, the Settlement was a product of non-collusive, arm's-length negotiations.  Grover Decl. at ¶ 12.  On June 24, 2013, the Parties participated in formal mediation with respected mediator and retired U.S. Magistrate Judge, the Hon. Leo S. Papas.  *Id.*; Ex. C at ¶ 10.  In addition, the Parties are represented by skilled and experienced counsel who have extensive background litigating and settling similar class actions.  Grover Decl. at ¶ 2-4, 16; Gaines Decl. at ¶¶ 2-6; Carpenter Decl. at ¶¶ 1, 7-8.  These factors support a finding that the Settlement is fair, reasonable, and adequate.

### 4.  The Proposed Notice and Claims Process Are Reasonable

In order to protect the rights of absent class members, courts must ensure that the settlement class members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).  Procedural due process requires that affected parties have the right to be heard at a meaningful time and in a meaningful manner.  It does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Apart from the manner of notice, Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice, which must concisely and clearly state in plain, easily understood language:  the nature of the action;  the definition of the class certified;  the class claims, issues, or defenses;  that a class member may enter an appearance through counsel if the member so desires;  that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded;  and the binding effect of a class judgment on class members under Rule 23(c)(3).  Although courts routinely approve class notices even when they provide only general information about a settlement, *see e.g., Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" is sufficient), the proposed notice plan here, including the Published Notice and Long Form Notice, attached as

/ / /

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

exhibits B and C, respectively, to the Stipulation of Settlement, comply fully with Rule 23(c)(2)(B), and provide more than adequate notice about the Settlement.

The proposed notice plan utilizes three methods to inform Settlement Class members about the terms of the Settlement, how to make a claim, how to object to the Settlement and how to request exclusion from the Settlement.  Ex. C at ¶ 61 (Stipulation of Settlement Ex. B and C).  The Stipulation of Settlement provides that Settlement Class members will be notified of the Settlement through a Published Notice to appear twice in the nationally distributed USA Today newspaper.  *Id.*  The Published Notice also will be emailed to potential Settlement Class members for whom Defendant has email addresses, which it estimates to be 65% of the individual and business customers who made credit or debit card purchases at airport ticket counters during the Class Period.  *Id.*  In addition, a Settlement Website will be published on the internet that, among other things, will summarize the settlement terms, provide contact information so that Settlement Class members may reach the Settlement Administrator, and include downloadable versions the Long Form Notice, Claim Form and Opt Out form, subject the Court's approval of those forms, along with other relevant documents.  *Id.*

The notice methods will inform Settlement Class members of the date and location of the final approval hearing.  Ex. C at ¶ 61. (Stipulation of Settlement Ex. B (the Published Notice), Ex. C (the Long Form Notice).  The notice methods explain the process for filing a claim form, the process and effect of requesting exclusion from the Settlement, and the process by which Settlement Class members may object to the Settlement by filing a written objection with the Court and serving counsel for the Parties, plus the applicable deadline(s) for each of those options.  *Id.*  The notice methods provide the Settlement Class members with information on how to access the Claim Form and Opt Out Form.  *Id.*  (Stipulation of Settlement Ex. A (the Claim Form) and Ex. D (the Opt Out Form).  Accordingly, the proposed notice procedure and accompanying forms comply with the standards of fairness, completeness, and neutrality required of a settlement notice disseminated under authority of the Court.  *See id.* at ¶ 61 (Stipulation of Settlement, Exs. A, B, C, and D).

/ / /

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861

MEMORANDUM OF POINTS & AUTHORITIES
ISO MOTION FOR PRELIMINARY APPROVAL

18

CASE NO. C-12-5978-CRB
CASE NO. C-13-1429-CRB

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1    In addition, the proposed notice procedures in the Stipulation of Settlement ensure the best

2    calculated dissemination of the class notice so that Settlement Class members are alerted to the

3    terms of the Settlement and provided with the opportunity to respond to it.  Within 14 calendar

4    days of preliminary approval, Plaintiffs will cause the Published Notice to be published in a

5    weekday National Edition of the USA Today in a size no less than a 1/8 page and then published a

6    second time in a weekday National Edition of the USA Today between the 15th and 21st calendar

7    day after the Court grants preliminary approval.  Ex. C at ¶ 61(a) (Stipulation of Settlement Ex. B).

8    In addition, within 20 days after preliminary approval is granted, Defendant must provide

9    the list of known email addresses of individual customers and business customers who made a

10   credit or debit card purchase at an airport ticket counter during the Class Period to the Settlement

11   Administrator.  The Settlement Administrator then, within 20 day of receiving the email addresses,

12   must email the Published Notice to those addresses.  *Id.*

13   Finally, within fourteen (14) days of preliminary approval, the Settlement Administrator

14   will     publish     the     Settlement     Website     on     the     internet     at     the     URL

15   www.SouthwestFACTASettlement.com (or a similar name if that one is not available),

16   setting forth the information and relevant forms, as described previously, which will remain

17   active for six months after the effective date of the Settlement.  Ex. C at ¶ 61(c).

18   In a case like this, where the mailing addresses of class members cannot be ascertained

19   despite reasonable effort, notice by email, publication and website clearly suffices.  *See*

20   *Mirfasihi v. Fleet Mortgage Corp.*, 356 F 3d 781, 786 (7th Cir. 2004) (notice by publication and

21   website adequate where individual notice impossible); *see also, Battle v. Liberty National Life*

22   *Ins. Co.*, 770F.Supp. 1499, 1515, n.47 (M. D. Ala. 1991) (individual notice not required where

23   absent members are not identified and cannot be located through diligent efforts) *aff'd*, 874 F.2d

24   1279 (11th Cir. 1992).   Here, the Parties are able to access at least a portion of the Settlement

25   Class members' email addresses and, therefore, have devised a thorough notice plan that

26   combines newspaper publication, a settlement website, and email notification, which provides

27   the "best notice practicable" under the circumstances. *See Van Horn v. Trickey*, 840 F.2d 604,

28   / / /

606 (8th Cir. 1988) (posting at central location sufficient even where individual notice was possible).

### 5.   Plaintiffs Will Submit a Separate Application for the Requested Attorneys' Fees, Costs, and Expenses

Pursuant to the terms of the Stipulation of Settlement, Plaintiffs' Counsel will not seek more than $450,000 in fees and not more than $15,000 in costs incurred in litigating the Actions. Ex. C at ¶ 63.   Plaintiffs' Counsel will file a motion for reasonable attorneys' fees, costs, and expenses at least one week prior to the opt-out/objection deadline so that Class Members will have an opportunity to inspect Plaintiffs' Counsel's fee application prior to the deadline for submitting objections or requests for exclusion.  Defendant will not oppose Plaintiffs' Counsel's application for fees and costs pursuant to the Settlement.  *Id.*  At this point, Plaintiffs do not seek approval of the fees/costs provision, but only asks that the Court include the maximum potential fee request so that the class can be informed of the provision.

### 6.   The Settlement Provides Reasonable Service Awards for the Class Representatives

Named plaintiffs in class action litigation are eligible for reasonable service awards.  *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $300,000 payment to each class representative in employment action settling before class certification) (quoting *In Re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving incentive payments up to $85,000 for named plaintiffs in employment action settling prior to class certification); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

The factors courts use in determining the amount of service awards include (1) a comparison between the service awards and the range of monetary recovery available to the class (*see Ingram*, 200 F.R.D. at 694*; Roberts*, 979 F. Supp. at 204); (2) time and effort put into the

litigation (*see Van Vranken*, 901 F. Supp. at 299; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); (3) whether the litigation will further the public policy underlying the statutory scheme (*see Roberts*, 979 F. Supp. at 201 n.25); and (4) risks of retaliation (*see id.* at 202; *Cook*, 142 F.3d at 1016).

All of the above factors support the service awards requested here. The service awards (or enhancement awards) of $5,000 each to Plaintiffs Miller and Lumos are intended to compensate them for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class. Ex. C at ¶ 64; Grover Decl. at ¶¶ 22, 34-35; Carpenter Decl. at ¶ 6. In agreeing to serve as Class Representatives, Plaintiffs formally agreed to accept the responsibilities of representing the interests of all Class Members. In addition, Plaintiffs assumed liability for litigation costs in the event their claims were unsuccessful. Defendant does not oppose payment of $5,000 as an enhancement to each of the named Plaintiffs. The $10,000 in total enhancement awards represents only approximately one-half on one percent of the Settlement Fund. Ex. C at ¶¶ 57, 64. Plaintiffs' proposed enhancements will also be the subject of the separate fees and costs motion that will be filed at least one week prior to the opt-out/objection deadline.

### D.   A Final Approval Hearing Should be Scheduled

Once a class action settlement is preliminarily approved, the court may schedule a final fairness hearing "at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *see* 4 Newberg on Class Actions § 11:25 (4th ed. 2012). The following schedule sets forth a proposed sequence for the relevant dates and deadlines culminating in a final fairness hearing, assuming that the Court preliminarily approves the Settlement.

| DEADLINE | ACTION |
|---|---|
| Fourteen (14) days after Court grants preliminary approval. | Plaintiffs cause Published Notice to appear in USA Today with second publication to appear between the 15th and 21st days after preliminary approval is granted. Ex. C at ¶ 61(a). |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

| DEADLINE | ACTION |
|---|---|
| Twenty (20) days after Court grants preliminary approval. | Defendant provides known email addresses to Settlement Administrator. Ex. C at ¶ 61(b). |
| Twenty (20) days after receiving email addresses from Defendant. | Settlement Administrator emails the Published Notice to potential Settlement Class members. Ex. C at ¶ 61(b). |
| Fourteen (14) days after Court grants preliminary approval. | Settlement Administrator publishes Settlement Website on the internet. Ex. C at ¶ 61(c). |
| At least one (1) week prior to the Opt Out deadline. | Class Counsel shall file a motion seeking approval of attorneys' fees and costs, the proposed enhancement awards for the Class Representatives, and approving payment to the Settlement Administrator. |
| Ninety (90) calendar days from the date on which the last Published Notice is made. | Settlement Class members must electronically submit or postmark Claim Forms. Ex. C at ¶ 56. |
| Ninety (90) calendar days from the date on which the last Published Notice is made. | Settlement Class members must postmark requests to be excluded (Opt Out Forms) from the settlement. Ex. C at ¶ 66. |
| Ninety (90) calendar days from the date on which the last Published Notice is made. | Class Members must file and serve a written objection and a notice of intention to appear at the Final Approval Hearing. Ex. C at ¶ 67. |
| Fourteen (14) days prior to Final Approval Hearing. | Plaintiffs will move for an order granting final approval of the class settlement. |
| TBD by Court and at least 135 days after preliminary approval order issues to allow for actions described above. | Final Approval Hearing. |

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) consolidating the above-referenced actions for purposes of approving the Stipulation of Settlement; (2) preliminarily approve the Stipulation of Settlement; (3) conditionally certify the proposed settlement Class; (4) appoint Plaintiffs and their Counsel as Class Representatives and Class Counsel, respectively; (5) approve Rust Consulting, Inc. as the Settlement Administrator; (6) approve and direct the distribution and publication of the Long Form Notice and Published

1   Notice pursuant to the proposed notice plan; and (7) schedule a fairness hearing for final approval

2   of the Settlement.

3

4   Dated:  September 17, 2013          **KELLER GROVER LLP**

5

6                                      By:  /s/ Eric A. Grover

7                                           ERIC A. GROVER

8                                      *Attorneys for Plaintiff*
                                       ROBERT MILLER and the Proposed Class
9

10  Dated:  September 17, 2013          **GAINES & GAINES APLC**

11

12                                     By:  /s/ Daniel F. Gaines

13                                          DANIEL F. GAINES

14                                     *Attorneys for Plaintiff*
                                       ROBERT MILLER and the Proposed Class
15

16  Dated:  September 17, 2013          **CARPENTER LAW GROUP**

17

18

19                                     By:  /s/ Todd D. Carpenter

20                                          TODD D. CARPENTER

21                                     *Attorneys for Plaintiff*
                                       JAMIE LUMOS and the Proposed Class

22

23

24

25

26

27

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax. 415.543.7861