ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

*Attorneys for Plaintiff*
ROBERT MILLER on behalf of himself and others similarly situated

TODD D. CARPENTER (SBN 234464)
todd@carpenterlawyers.com
**CARPENTER LAW GROUP**
432 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 347-3517
Facsimile: (619) 756-6990

*Attorneys for Plaintiff*
JAMIE LUMOS on behalf of herself and others similarly situated

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ROBERT MILLER, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

SOUTHWEST AIRLINES CO., a Texas Corporation; and DOES 1 through 20, inclusive,

Defendants.

---

JAMIE LUMOS, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

SOUTHWEST AIRLINES CO., a Texas corporation; and DOES 1 through 20, inclusive,

Defendants.

Case No. C-12-5978-CRB
Case No. C-13-1429-CRB

CLASS ACTIONS

CONSOLIDATED FOR DISCOVERY PURPOSES ONLY

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: March 14, 2014
Time: 10:00 a.m.
Ctrm: 6, 17th Floor
Judge: Hon. Charles R. Breyer

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

PLEASE TAKE NOTICE that on March 14, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Charles R. Breyer presiding, Plaintiffs ROBERT MILLER and JAMIE LUMOS ("Plaintiffs") will and hereby do move this Court an order granting final approval of the class action settlement reached between Plaintiffs and Defendant SOUTHWEST AIRLINES CO. ("Defendant"). Specifically, Plaintiffs move for an order: 1) confirming the Court's previous findings that the requirements for class certification, for settlement purposes, are satisfied; 2) finding that the Settlement is fair, reasonable and adequate; 3) finally approving the Settlement; 4) finding that proper Notice of the Settlement was given; 5) directing distribution of settlement benefits as agreed in the Settlement; 6) dismissing Plaintiffs' claims with prejudice; 7) binding Class Members who did not timely exclude themselves from the Settlement to the release of claims in favor of Defendant as set forth in the Settlement; 8) barring Class Members who did not timely object to the Settlement or exclude themselves from the Settlement from prosecuting or pursuing any appeal of the Court's order (to the extent permitted by law); 9) direct that the clerk of the Court enter the Court's order as a final judgment; and 10) without affecting the finality of the final judgment, reserve continuing jurisdiction over the parties for the purposes of implementing, enforcing and/or administering the Settlement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Stipulation of Settlement and Release Between Plaintiffs and Defendant ("Stipulation of Settlement"), the Declaration of April Hyduk of Rust Consulting, Inc., the proposed order, the pleadings and papers filed in this case, and any oral argument this Court permits. Defendant does not oppose this motion.

Dated: February 21, 2014

**KELLER GROVER LLP**

By: /s/Eric A. Grover
ERIC A. GROVER

*Attorneys for Plaintiff*
ROBERT MILLER and the Class

Dated: February 21, 2014

**CARPENTER LAW GROUP**

By: /s/Todd D. Carpenter
TODD D. CARPENTER

*Attorneys for Plaintiff*
JAMIE LUMOS and the Class

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS ..... 2

A. The Complaints and Claims Alleged ..... 2

B. Final Status of the Claims Process ..... 4

III. TERMS OF THE SETTLEMENT ..... 5

A. Settlement Class and Class Period ..... 5

B. Settlement Fund and Settlement Payments to the Class Members ..... 5

IV. ARGUMENT ..... 6

A. The Notice was the Best Practicable Notice Under the Circumstances ..... 7

B. Final Approval of the Settlement is Warranted ..... 8

1. Each of the Relevant Criteria Supports Final Approval ..... 9

a. The Strength of Plaintiffs' Case Turns on an Untested Area of Law Creating Significant Risks to Plaintiffs and the Class ..... 9

b. The Complexity, Expense and Likely Duration of Continued Litigation Weighs in Favor of Final Approval ..... 10

c. The Value of the Settlement Favors Final Approval ..... 10

d. Disclosure of Documents and Data Demonstrating the Strengths and Weaknesses of this Action was Completed Prior to Entering into the Settlement ..... 11

e. The Experience and Views of Counsel Favor Final Approval ..... 12

f. Class Members' Positive Reaction to the Settlement Favors Final Approval ..... 13

/ / /

**TABLE OF CONTENTS**
**(continued)**

**Page**

C. The Settlement Class Meets the Rule 23 Class Certification Requirements ..... 13

1. The Class is Sufficiently Numerous ..... 13

2. Commonality is Satisfied ..... 14

3. Plaintiffs' Claims are Typical of Those of the Putative Class ..... 14

4. Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Class ..... 15

5. Predominance of Common Questions ..... 15

6. A Class Action is the Superior Method of Adjudication ..... 15

V. CONCLUSION ..... 17

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Amchen Products Inc. v. Woodward*, 521 U.S. 591 (1997) ........ 16

*Churchill Village, L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) ........ 1, 6, 7, 9

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........ 12

*Elkins v. Equitable Life Ins. of Iowa*, No. CivA96–296–Civ–T–17B, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ........ 17

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ........ 7

*Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) *aff'd*, 696 F.3d 811 (9th Cir. 2012) ........ 8

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ........ 15, 16

*Lumos v. Southwest Airlines Co.*, (N.D. Cal.) Case No. 3:13-cv-1429-CRB ........ 2

*Lumos v. Southwest Airlines Co.*, (S.D. Cal.) Case No. 3:13-cv-0342-JLS-BGS ........ 2

*Miller v. Southwest Airlines Co.*, (N.D. Cal.) Case No. 3:12-cv-5978-CRB ........ 2

*National Rural Telecom. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........ 12, 13

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ........ 9, 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........ 16

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

## TABLE OF AUTHORITIES
**(continued)**

**Page**

### Federal Cases (cont'd)

*Shames v. Hertz Corp.*,
No. 07-cv-2174-MMA WMC, 2012 WL 5392159
(S.D. Cal. Nov. 5, 2012) .......... 8

*Strube v. Am. Equity Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005) .......... 17

*Valentino v. Carter-Wallace*,
97 F.3d 1227 (9th Cir. 1996) .......... 15

*Vedachalam v. Tata Consultancy Servs., Ltd*,
No. C 06-0963 CW, 2013 WL 3929119
(N.D. Cal. July 18, 2013) .......... 13

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .......... 14

### State Cases

*Miller v. Southwest Airlines Co.*,
Alameda County Superior Court, Case No. RG12652437 .......... 2

### Statutes

15 United States Code
§ 1681(c)(g) .......... 1
§ 1681n .......... 2, 14, 16
§ 1681n(a)(1)(A) .......... 2, 6, 11

### Rules

Federal Rules of Civil Procedure
Rule 23(a) .......... 15
Rule 23(a)(1) .......... 13
Rule 23(a)(2) .......... 14
Rule 23(a)(4) .......... 15
Rule 23(b)(3)(A), (B) and (C) .......... 16
Rule 23(b)(3)(A)-(D) .......... 16
Rule 23(c)(2) .......... 7
Rule 23(e) .......... 8
Rule 23(e)(2) .......... 9

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**Treatises**

*Manual for Complex Litigation, Fourth* (4th ed. 2004)
§ 21.632-34 .......... 8

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax. 415.543.7861

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On October 18, 2013, the Court granted preliminary approval of the proposed class action settlement (the "Settlement") reached between Plaintiffs ROBERT MILLER and JAMIE LUMOS ("Plaintiffs" or "Named Plaintiffs") and Defendant SOUTHWEST AIRLINES CO. ("Southwest" or "Defendant"), the terms of which are set forth fully in the Stipulation of Settlement and Release Between Plaintiffs and Defendant ("Stipulation of Settlement").[1] Docket ("Dkt.") No. 40 (Oct. 18, 2013 Order). Pursuant to the preliminary approval order, Class Members were given notice of the proposed class settlement and that the Court would hold a fairness hearing on March 14, 2014. Dkt. No. 42-10 (Declaration of April Hyduk dated January 29, 2014 submitted in support of Motion for Attorneys' Fees) at ¶¶ 5, 7, 10.

The proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable. Dkt. No. 42-2 (Stipulation of Settlement); *see Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The positive response of the Class Members to the Settlement provides strong support that final settlement approval is appropriate. Not a single Class Member objected to the Settlement and only four Class Members opted out of the Settlement. Also, 18,544 Class Members submitted valid claims, which will result in cash payments of approximately $61.04 each, which is the Net Settlement Fund, approximately $1,132,053, divided by the number of valid claims. Declaration of April Hyduk submitted in support of the Motion for Final Approval ("Hyduk Decl.") at ¶ 9; *see also*, Dkt. No. 42-2 at ¶ 59(a). The Settlement provides excellent results for Class Members who suffered no monetary loss as a result of Defendant's allegedly willful violation of their rights under Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681(c)(g), which is part of the Fair Credit Reporting Act. Indeed, Class Members who simply took the step of submitting a claim will

---

[1] The Stipulation of Settlement is at Docket No. 42-2, attached as Exhibit A to the Declaration of Eric A. Grover submitted with the Motion for Award of Reasonable Attorneys' Fees. Dkt. No. 42-1.

receive an amount close to the $100.00 statutory damage provided for in 15 U.S.C. § 1681n(a)(1)(A) without the risk of not succeeding at class certification or at trial.

Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II. PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS

### A. The Complaints and Claims Alleged

On October 17, 2012, Plaintiff Robert Miller brought a putative class action (the "First Action") captioned *Miller v. Southwest Airlines Co.*, No. RG12652437, in Alameda County Superior Court. Defendant removed the First Action to the United States District Court for the Northern District of California on November 26, 2012, where it was assigned Case No. 3:12-cv-5978-CRB. Dkt. No. 42-2 at ¶ 1; Dkt. No. 42-1 at ¶ 5.

On February 12, 2013, Plaintiff Jamie Lumos brought a putative class action (the "Second Action") captioned *Lumos v. Southwest Airlines Co.,* United States District Court for the Southern District of California Case No. 3:13-cv-0342-JLS-BGS, against Defendant. Dkt. No. 42-2 at ¶ 2; Dkt. No. 42-1 at ¶ 6. On March 25, 2013, the Second Action was transferred to the United States District Court for the Northern District of California and assigned Case No. 3:13-cv-1429-CRB. Dkt. No. 42-2 at ¶ 7. On April 26, 2013, the Court ordered the First and Second Actions consolidated for discovery purposes. Dkt. No. 27. The First Action and Second Action are referred to collectively as the "Actions."

The Actions allege that Defendant violated FACTA, 15 U.S.C. § 1681 (c)(g), by willfully printing the credit and debit card expiration date on electronically printed receipts provided to individual consumers. Dkt. No. 42-2 at ¶¶ 1, 2; Dkt. No. 42-1 at ¶ 8. FACTA prohibits any retailer that accepts credit and/or debit cards (collectively "credit cards") from printing "the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681(c)(g). In the Actions, Plaintiffs seek statutory damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1681n based on allegations that Southwest willfully violated FACTA by intentionally or recklessly disregarding the statute's requirements. Dkt. No. 42-1 at ¶ 8.

The FACTA truncation requirements at issue in the Actions apply only to individual consumer transactions, as opposed to transactions made by or for a business. *See* 15 U.S.C.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

§ 1681(c)(g). From October 17, 2007 through January 25, 2013, Defendant estimates that a total of between 880,000 and 2,200,000 relevant credit and debit card purchases or transactions occurred at its airport ticket counter and cargo counters that could have resulted in a printed receipt to customers. Dkt. No. 42-2 at ¶ 4. Plaintiffs allege that FACTA's truncation requirements were violated for those purchases or transactions made by individual consumers. Based on historical data, Defendant estimates that approximately one-half of these purchases or transactions were made by consumers and the other half by business customers not covered by FACTA. Dkt. No. 42-2 at ¶ 4. Because many individual consumers made more than one purchase or transaction during the Class Period (as defined in paragraph 20 of the Stipulation of Settlement), the Parties do not believe that the Settlement Class (as defined in paragraph 42 of the Stipulation of Settlement) exceeds one million individual consumers, and is likely substantially less. Dkt. No. 42-2 at ¶ 4.

Defendant has denied all of the allegations in their entirety. To date, no class has been certified and no court has made any findings that Defendant engaged in any wrongdoing or in any wrongful conduct or otherwise acted improperly or in violation of any state law, rule or regulation, with respect to the issues presented in the Actions. Dkt. No. 42-2 at ¶ 11; Dkt. No. 42-1 at ¶ 9.

Plaintiffs and Defendant engaged in formal discovery as well as informal discovery prior to engaging in settlement discussions. Plaintiffs propounded numerous written discovery requests, including interrogatories, requests for admission, and document requests. Defendant also propounded document requests and responded to some of Plaintiffs' documents requests, producing over 2,000 pages of documents. Plaintiffs further requested and received relevant documents from third-parties Visa and Chase Paymentech. Dkt. No. 36-1 (Grover Declaration submitted in support of preliminary approval motion at ¶ 10).

Defendant was in the process of responding to the remaining written discovery requests and preparing a voluminous document production when, in an effort to avoid protracted and costly litigation, the Parties began discussing the possibility of settlement. In preparation for mediation, the Parties exchanged additional informal discovery. Dkt. No. 36-1 at ¶¶ 11-12.

In an effort to avoid protracted and costly litigation, the Parties began discussing the possibility of settlement and exchanged informal discovery that enabled the Parties to engage in

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

informed, arms'-length negotiations of possible settlement alternatives. Dkt. No. 36-1 at ¶ 12. On June 24, 2013, the Parties engaged in a formal mediation session with respected mediator and retired U.S. Magistrate Judge, the Hon. Leo S. Papas, and reached a settlement of both Actions subject to approval of the Court. *Id.*; Dkt. No. 42-2 at ¶ 10.

The Parties entered into a more detailed, formalized settlement agreement to submit to the Court for preliminary and final approval. All of the terms of the Parties' Settlement are set forth in the Stipulation of Settlement. Dkt. No. 42-2; *see also*, Dkt. No. 42-1 at ¶ 13.

**B. Final Status of the Claims Process**

The Court granted preliminary approval of the settlement and Settlement Stipulation on October 18, 2013. Dkt. No. 40. The notice procedure set forth in the Stipulation of Settlement and approved in the Court's preliminary approval order required that notice of the class settlement be provided in multiple ways: publication on the internet via a settlement website, email notification, and publication on two separate occasions in a national newspaper. *See* Dkt. No. 42-2 at ¶ 61; Dkt. No. 40. Accordingly, on October 29, 2013, Rust Consulting, the Court-approved settlement administrator, published the settlement website and activated the toll-free number. Dkt. No. 42-10 at ¶¶ 3, 8-10. On November 17 and 18, 2013, Rust Consulting sent over 3,720,000 email notices to potential Class Members. Dkt. No. 42-10 at ¶¶ 3, 7; Dkt. No. 42-2 at ¶ 61(b) and (c). Also as required by the preliminary approval order, Rust Consulting caused the Published Notice to appear in USA Today, a newspaper with national publication, on two separate occasions, in the manner required by the Court's order. Dkt. No. 42-10 at ¶¶ 3, 5; Dkt. No. 42-2 at ¶¶ 61 (a).

Rust Consulting received no objections to the settlement and only four opt outs. Hyduk Decl. at ¶¶ 11, 12.

Rust Consulting has been responsible for receipt and processing of all Claim Forms. Dkt. No. 42-2 at ¶ 54. The deadline to postmark a claim was February 5, 2014. *Id.* Rust Consulting received valid claim forms from 18,428 Class Members. Hyduk Decl. at ¶¶ 5, 9. The parties also agreed to accept 104 late-filed claims as timely. *Id.* at ¶ 5. If the Court grants final approval, Rust Consulting will calculate the settlement payments to the Class Members based on the number of total valid claims received.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

## III. TERMS OF THE SETTLEMENT

### A. Settlement Class and Class Period

The Stipulation of Settlement defines the Settlement Class as follows:

> All individuals who used a credit card or debit card to complete a purchase or transaction at a Southwest airport ticket counter or cargo counter resulting in an electronically printed receipt between October 17, 2007 and January 25, 2013 (the "Settlement Class").

Dkt. No. 42-2 at ¶¶ 42, 51.

The Settlement Class excludes business customers who are not covered by FACTA. *Id.* The Settlement Class further excludes current employees of Defendant or the Court or its staff. *Id.* The "Class Period" is defined as the period October 17, 2007 through January 25, 2013, inclusive. *Id.* The members of the Class are referred to in this memorandum as the "Class Members." Based on information from Defendant's records, the Parties do not believe that the Settlement Class exceeds one million individual consumers, and likely has substantially fewer members. Dkt. No. 42-2 at ¶ 4.

### B. Settlement Fund and Settlement Payments to the Class Members

The Stipulation of Settlement requires Defendant to pay $1,800,000 (the "Settlement Fund") to settle the Actions. Dkt. No. 42-2 at ¶ 57. The Parties estimate that, after deducting the administration costs, attorneys' fees and costs, and modest enhancements for the named Plaintiffs, all of which are subject to the Court's approval, approximately $1,146,121.35 (the "Net Settlement Fund") will be available for distribution on a pro rata basis to the Class Members who filed valid claims. Dkt. No. 42-2 at ¶¶ 57, 59. All of the Settlement Fund will be paid out; there is no reversion of any amount to Defendant. Dkt. No. 42-2 at ¶ 59(e).

The Stipulation of Settlement provides that Class Members who file a valid claim and do not opt out of the settlement will receive settlement payments equal to a pro rata share of the Net Settlement Fund. Dkt. No. 42-2 at ¶ 59 (a). The actual amount paid out depends on the number of Class Members who submit valid Claim Forms. Dkt. No. 42-2 at ¶ 59(a). According to Rust, 18,544 valid claims have been filed. Hyduk Decl. at ¶ 9. Assuming that the Net Settlement Fund equals $1,146,121.35, the 18,544 participating Class Members who filed valid claims will receive

approximately $61.81 each. Hyduk Decl. at ¶¶ 5, 9, 13; Dkt. No. 42-2 at ¶ 59(a). That amount falls within Plaintiffs' initial estimates of between $25 and $200 that were outlined in the preliminary approval motion and contained in the class notice and is close to the $100.00 statutory damage provided for in 15 U.S.C. § 1681n(a)(1)(A).

The Stipulation of Settlement provides that any settlement checks that are not cashed after a 90-day expiration period will be donated to the Identity Theft Resource Center, a non-profit entity which provides consumer and identity theft victim support as well as public education, and advises governmental agencies, legislators, law enforcement, and businesses about the problem of identity theft. Dkt. No. 42-2 at ¶ 59(d). No money from the Settlement Fund shall revert to Southwest. *Id.* at ¶ 59(e).

In addition, as of October 30, 2012, all of Defendant's electronically printed receipts resulting from purchases or transactions at airport ticket counters have complied with FACTA's truncation requirements. Dkt. No. 42-2 at ¶ 60. And, as of January 25, 2013, all of Defendant's electronically printed receipts resulting from purchases or transactions at cargo counters have complied with FACTA's truncation requirements. *Id.* As part of the Settlement, Defendant has agreed to continue to abide by FACTA's truncation requirements. *Id.*

## IV. <u>ARGUMENT</u>

The policy of the federal courts is to encourage settlement before trial, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (noting "strong judicial policy" favoring settlements, provided they were reached through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

Cir. 1989). These concerns apply with particular force in a case such as this where an allegedly illegal practice affected tens of thousands of consumers.

**A. The Notice was the Best Practicable Notice Under the Circumstances**

Federal Rule of Civil Procedure 23 (c)(2) requires that the class members receive "the best notice practicable under the circumstances." Fed. R. Civ. P 23 (c)(2); *see also*, *Churchill Village*, 361 F.3d at 575. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village*, 361 F.3d at 575.

On October 18, 2013, the Court granted preliminary approval of the Settlement and approved the proposed notice plan, including email notice, establishment of the Settlement Website and the Published Notice (collectively "the Notice"). *See* Dkt No. 40 (Order) and Exs. A and B attached to Order). The court-approved Notice advised Class Members of the essential terms of the Settlement, defined the Settlement Class, set forth the procedure for opting out of the Class or filing objections to the Settlement and provided specifics on the date, time and place of the fairness hearing. *See* Dkt. No. 40, Exs. A and B. The Notice also provided the details of the case and the proposed settlement and the specific options available to Class Members. *Id.* In particular, it informed Class Members of the settlement amount and proposed distribution of the settlement funds, thereby permitting them to make an informed decision about whether to opt out, submit a claim form or take other or no action. *Id.*

Pursuant to the notice procedure set forth in the Stipulation of Settlement and approved in the Court's preliminary approval order, on October 29, 2013, Rust Consulting published the Settlement Website and activated the toll-free number. Dkt. No. 42-10 at ¶¶ 3, 8-10. On November 17 and 18, 2013, Rust Consulting sent over 3,720,000 email notices to potential Class Members. Dkt. No. 42-10 at ¶¶ 3, 7; Dkt. No. 42-2 at ¶ 61(b) and (c). Also as required by the preliminary approval order, Rust Consulting caused the Published Notice to appear in USA Today, a newspaper with national publication, on two separate occasions, in the manner required by the Court's order. Dkt. No. 42-10 at ¶¶ 3, 5; Dkt. No. 42-2 at ¶¶ 61 (a). Other district courts in the Ninth Circuit have found similar, multifaceted notice programs to be sufficient. *See e.g.*, *Lane v.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

*Facebook, Inc.*, No. C 08-3845 RS, 2010 WL 9013059, at *1 (N.D. Cal. Mar. 17, 2010) *aff'd*, 696 F.3d 811 (9th Cir. 2012) (granting final approval of class settlement and finding that notice via email and Facebook messages was adequate); *Shames v. Hertz Corp.*, No. 07-cv-2174-MMA WMC, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (granting final approval of class settlement and holding that redundancies in notice procedure, which included e-mail and publication, reasonably ensured the best practicable notice), *appeal dismissed* (Jan. 23, 2013).

The notice procedure also provided adequate time for Class Members to submit claim forms, make objections or opt out of the settlement. Dkt. No. 42-2 at ¶¶ 17, 21-22. For 12 Class Members who submitted a deficient claim form, the Claims Administrator is providing notice of the deficiency and adequate opportunity to cure the defect. Hyduk Final Approval Decl. at ¶¶ 6-9.

The Notice approved by the Court at the preliminary approval stage was the best notice practicable under the circumstances and fairly apprised Class Members of the proposed settlement terms and their options.

**B. Final Approval of the Settlement is Warranted**

Pursuant to Federal Rule of Civil Procedure 23(e), the court must approve any proposed class settlement. Court approval of class action settlements requires the following steps:

> (1) Preliminary approval of the proposed settlement at a preliminary hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected Class members; and
>
> (3) A "formal fairness hearing," or final settlement approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Litigation, Fourth* (4th ed. 2004) ("Manual") § 21.632-34.

The first two steps of this process are now complete. The first step was completed on October 18, 2013, when this Court conducted a hearing and granted preliminary approval to the Settlement. Dkt. No. 40. In doing so, the Court determined that the Settlement was within the

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

range of possible final approval and that notice to the Class Members of the Settlement's terms and of the scheduling of the formal fairness hearing should be distributed. *Id.*

The second step in the class action settlement approval process, the dissemination of the Notice, is complete as well, as just described.

The last step in the class action settlement approval process is the final approval hearing at which the Court shall determine whether the Settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). At the final approval hearing, scheduled on March 14, 2014, Class Members will have the opportunity to be heard regarding the Settlement, and Class Counsel will present evidence and argument in support of the Settlement. At the conclusion of the final approval hearing, the Court will decide whether to grant final approval of the Settlement and whether to enter a final order and judgment.

**1. Each of the Relevant Criteria Supports Final Approval**

When evaluating the fairness, reasonableness and adequacy of a settlement, courts consider some or all of the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 576; *Hanlon*, 150 F.3d at 1026. In addition, the Court must determine that the settlement was not the product of collusion between the negotiating parties. *Churchill Village*, 361 F.3d at 576; *Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

**a. The Strength of Plaintiffs' Case Turns on an Untested Area of Law Creating Significant Risks to Plaintiffs and the Class**

A critical factor in determining the strength of Plaintiffs' case is the fact that, to Plaintiffs' knowledge, there is no case law where a defendant has been found liable for a willful violation of FACTA. Dkt. No. 42-1 at ¶ 43; Dkt. No. 42-7 (Carpenter Decl.) at ¶¶ 4-5. Although Plaintiffs

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

maintain that they would succeed at trial and Defendant, on the other hand, maintains that it would succeed in defeating Plaintiffs' claims, there is significant uncertainty concerning the interpretation of FACTA and the requirements for a "willful" violation of FACTA and determining how best to litigate the Actions so that willful violations could be established on a class basis.

Such uncertainty supports that the Settlement is a good compromise for the absent Class Members. The Class Members submitting valid claims will receive monetary benefits and avoid the risks of proceeding with a trial on an untested theory of liability. *See* Dkt. No. 42-1 at ¶¶ 42-43.

**b. The Complexity, Expense and Likely Duration of Continued Litigation Weighs in Favor of Final Approval**

Consumer class action cases are expensive and time-consuming to prosecute. However, this case presents a more difficult situation than most given the lack of legal authority surrounding the interpretation of FACTA. Continued litigation of this action against Defendant would likely be complex and expensive, due to the size of the class and the nature of the claims.

Furthermore, the Settlement avoids the need for a contested class certification motion that would be time consuming and costly for Plaintiffs to file, Defendant to oppose, and the Court to decide. In addition, if the Court were to deny such a motion for class certification, Class Members would be left without a group remedy, and the issues presented here would need to be litigated individually in a piecemeal, costly, and time-consuming fashion. The Settlement also avoids a lengthy trial or trials that likely would have involved testimony by numerous witnesses and experts. *See* Dkt. No. 36-1 at ¶¶ 16-17, 26-27.

**c. The Value of the Settlement Favors Final Approval**

Under the Settlement, Defendant has agreed to pay $1,800,000 (including attorneys' fees and costs). Dkt. No. 42-2 at ¶ 57. The Settlement provides an excellent result for Class Members who suffered no actual monetary loss as a result of Defendant's conduct. Class Counsel in this case negotiated a settlement which ensured that Class Members who submit a simple claim form will receive a significant cash benefit. Each Class Member who does not opt and files a valid

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

claim will receive a pro rata share of the Net Settlement Fund based on the distribution formula set forth in the Stipulation of Settlement. Dkt. No. 42-2 at ¶ 59(a). There were 18,544 Class Members who filed valid claims. Hyduk Decl. at ¶ 9. Because the exact amount that each participating Class Member will receive is dependent on the total number of claims received, each participating Class Member will receive a payment of approximately $61.81. Hyduk Decl. at ¶¶ 5, 9, 13; Dkt. No. 42-2 at ¶ 59(a).

If the Actions had not settled and, ***if*** Plaintiffs succeeded in overcoming the significant hurdle of class certification ***and*** proved Defendant's liability at trial, the Class Members would have been seeking FACTA statutory damages, which are limited to between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A). The Settlement provides the class members with a monetary payment of approximately $61.81 and does so now, avoiding the very real risk not succeeding at the liability phase, which likely would take years to determine. These are significant benefits for the Class Members and the efficiency with which this litigation was conducted and resolved should be rewarded. *See* Dkt. No. 42-1 at ¶¶ 23, 44-46; Dkt. No. 42-4 (Gaines Decl.) at ¶ 6; *see also*, *e.g.*, *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *27-28 (median amounts recovered in settlement of shareholder class actions were between 2%-3% of possible damages). Accordingly, the monetary recoveries justify the final approval of the Settlement.

**d. Disclosure of Documents and Data Demonstrating the Strengths and Weaknesses of this Action was Completed Prior to Entering into the Settlement**

The Settlement was only after the Parties exchanged substantive information through discovery, as well as apprised each other of their respective factual contentions, legal theories, and defenses. Dkt. No. 36-1 at ¶¶ 10-12, 25. Thus, the Parties negotiated the Settlement with ample knowledge of the strengths and weaknesses of this case and the amounts necessary to compensate Class Members for their estimated damages. *Id.*

The Parties engaged in extensive good-faith, arms-length negotiations, including a full-day mediation session conducted before a respected federal magistrate judge (retired). Dkt. No. 42-1 at ¶¶ 11-13; Dkt. No. 42-7 at ¶¶ 3, 5-6; *see also*, Dkt. No. 36-1 at ¶¶ 26-27. Moreover, while Defendant did not dispute that it in fact printed prohibited information on customer receipts,

Defendant strongly denied liability for statutory damages and challenged Plaintiffs' ability to certify the class and prove a willful violation of FACTA. It was apparent that continued litigation of this lawsuit presented Plaintiffs with substantial legal risks of certifying the class, proving liability and defeating any appeals relating to liability, damages or class certification. Dkt. No. 42-1 at ¶ 42; Dkt. No. 42-7 at ¶¶ 4-5.

**e. The Experience and Views of Counsel Favor Final Approval**

The endorsement of qualified and well-informed counsel of the settlement as fair is entitled to significant weight. *National Rural Telecom. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." (citation omitted). This is because parties "represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id.* (citation omitted). "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (a court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.").

Class Counsel believe this Settlement to be an excellent result for the Class Members. *See* Dkt. No. 36-1 at ¶¶ 16-17, 25-27, Dkt. No. 42-1 at ¶¶ 6-7; Dkt. No. 42-4 at ¶¶ 6-7; Dkt. No. 42-7 at ¶ 6. Class Counsel have significant experience in complex class litigation, including numerous FACTA and other privacy related class actions. *See* Dkt. No. 42-1 at ¶ 2-4, 36, 42; Dkt. No. 42-4 at ¶¶ 2-6, 11-14; Dkt. No. 42-7 at ¶¶ 12-13. Class Counsel are of the opinion that the Settlement is fair, adequate, reasonable, and in the best interest of the Class Members. . No. 36-1 at ¶¶ 16-17, 25-27; Dkt. No. 42-1 at ¶¶ 16-17, 25-27, Dkt. No. 42-4 at ¶ 6-7; Dkt. No. 42-7 at ¶ 6.

/ / /

/ / /

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**f. Class Members' Positive Reaction to the Settlement Favors Final Approval**

Finally, courts look at the reaction of class members to determine if a settlement that directly affects their interests should be approved as fair, adequate, and reasonable. Of most importance is the fact that not a single Class Member objected to the Settlement. Hyduk Decl. at ¶ 11. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm.*, 221 F.R.D. at 529. "The absence of a single objection to the Proposed Settlement provides further support for final approval. . . . " *Id.*; *see also, Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3929119, at *1 (N.D. Cal. July 18, 2013) (same). Moreover, 18,544 Class Members filed valid claims and only four Class Members chose to opt out of the Settlement. Hyduk Decl. at ¶¶ 5, 9-10. The Court should construe the overwhelming non-opposition to and participation in the Settlement as strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable.

For all of the reasons stated above, the Settlement proposed in this action is fair, reasonable and adequate.

**C. The Settlement Class Meets the Rule 23 Class Certification Requirements**

In the preliminary approval order, the Court conditionally held that, for settlement purposes, the Settlement Class satisfies the class certification criteria of Federal Rule 23. Ex. B. For the reasons to be discussed below, the certification of the Settlement Class for settlement purposes should be confirmed in a final approval order.

**1. The Class is Sufficiently Numerous**

The numerosity requirement is satisfied when joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). Based on its records, Defendant estimates that, during the Class Period, a total of between 880,000 and 2,200,000 relevant credit and debit card purchases or transactions occurred at its airport ticket counter and cargo counters that could have resulted in a printed receipt to customers. Dkt. No. 42-2 at ¶ 4. Defendant estimates that approximately one-half of these purchases or transactions were made by individual consumers. *Id.* Because many

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

individual consumers made more than one purchase or transaction during the Class Period, the Parties do not believe that the Settlement Class exceeds one million individual consumers, and is likely substantially less. Even if the Settlement Class were only a small percentage of that amount, the number of class members would be much too numerous for joinder to be practicable.

**2. Commonality is Satisfied**

To qualify for certification, proposed class members must share common questions of fact and law. Fed. R. Civ. P. 23(a)(2); see also, *Hanlon*, 150 F.3d at 1019 (commonality is "construed permissively"). To satisfy commonality, the plaintiff must assert at least one common contention that is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). In this case, all Class Members share two common legal questions – whether Southwest violated FACTA by printing the expiration date on customer receipts, and whether that violation was willful. Any factual variations among class members, such as differences in the number of transactions they engaged in, which credit or debit cards they used, or what airport or cargo center they visited, have no bearing on these common legal questions. All class members share the common interest of determining whether the same receipt-printing practice was lawful and whether they are entitled to statutory damages for Defendant's allegedly willful violations. Dkt. No. 36-1 at ¶ 31.

**3. Plaintiffs' Claims are Typical of Those of the Putative Class**

Typicality is satisfied if the named plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, typicality is satisfied because the Plaintiffs' claims are the same as the claims brought by other Class Members. Plaintiffs and all other Class Members allege the same injury and violation of their legal rights resulting from the same course of conduct, the printing of too much information on credit or debit card receipts. Plaintiffs and all other Class Members also seek the same relief, specifically, statutory damages under 15 U.S.C. § 1681n. The Actions are based on conduct that is not unique to Plaintiffs, but on a course of conduct that is common to all Class Members. Dkt. No. 36-1 at ¶ 32. Plaintiffs' claims, therefore, are typical of the class.

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**4. Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Class**

Rule 23(a) also requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. No conflicts of interest between Plaintiffs and Class Members exist in this case. Indeed, given the similarity of the claims asserted and remedies sought by Class Members in this case, it is hard to imagine how there could be any conflicts.

Moreover, this case has been prosecuted with zeal and competence by Plaintiffs' Counsel. Plaintiffs' counsel have substantial class action experience and experience litigating FACTA case and can adequately represent the Class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners). Dkt. No. 42-1 at ¶¶ 2-4, 16, 33; Dkt. No. 42-4 at ¶¶ 2-6; Dkt. No. 42-7 at ¶¶ 1, 7-8. Accordingly, Plaintiffs and their Counsel have and will adequately represent the settlement Class.

**5. Predominance of Common Questions**

Here, whether Southwest violated FACTA intentionally or recklessly (which suffices for willfulness) is the central issue that will determine its liability to the class. That common issue and the associated common legal questions clearly predominate over any potential individualized issues. Dkt. No. 36-1 at ¶ 31.

**6. A Class Action is the Superior Method of Adjudication**

A class action is the superior method of adjudication compared to a multitude of individual suits. "[I]f a comparative evaluation of other procedures reveals no other realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender*, 244 F.3d at 1163 (citations omitted); *see also Valentino v. Carter-Wallace,* 97 F.3d 1227, 1235-36 (9th Cir. 1996) (similar).

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

In *Culinary/Bartender*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330. 244 F.3d at 1163. Here, Class Members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation. 15 U.S.C. § 1681n. As in *Culinary/Bartender*, "this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Id.* at 1163, quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). *Culinary/Bartender* clearly dictates that the superiority requirements of Rule 23(b)(3) are satisfied here.

Superiority also is supported by the interest of members of the class in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). However, when a court reviews a class action settlement, the fourth factor does not apply. *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997) (in deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems.). The remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, Class Members have no particular interest in individually controlling the prosecution of separate actions. Statutory damages cannot exceed $1,000. 15 U.S.C § 1681n. Plaintiffs do not allege that any Class Members suffered actual economic loss, and any who believe they did had the option to opt out of the settlement if they wish to pursue actual damages. Second, all pending FACTA lawsuits against Southwest are now before this Court. Finally, it is desirable to concentrate the issues in this forum because noncompliant receipts were printed at airports and cargo centers throughout California, and Plaintiffs are California residents.

Moreover, the parties have reached a Settlement. "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

*of Iowa*, No. CivA96–296–Civ–T–17B, 1998 WL 133741, at * 19 (M.D. Fla. Jan. 27, 1998); *see also*, *Strube v. Am. Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of settlement."). And although manageability is not a concern in the settlement context, *Amchem*, 521 U.S. at 593, Plaintiffs are not aware of any issues that would render unmanageable the adjudication of Plaintiffs' class claims. Accordingly, the class action is the superior method for adjudicating this action.

## V. CONCLUSION

For all of the reasons discussed above, the proposed class Settlement is fair, reasonable and adequate, as this Court initially agreed in granting preliminary approval. The proposed Settlement will result in substantial benefits to Class Members and was achieved as the result of informed, non-collusive and arms' length negotiations conducted by experienced counsel. For all of the foregoing reasons, Plaintiffs respectfully requests that the Court grant final approval of the parties' class action Settlement, and that the Court enter the proposed order that was submitted as part of the motion for fees and costs filed on January 29, 2014. Dkt. No. 42-12.

Dated: February 21, 2014

**KELLER GROVER LLP**

By: /s/ Eric A. Grover
ERIC A. GROVER

*Attorneys for Plaintiff*
ROBERT MILLER and the Class

Dated: February 21, 2014

**CARPENTER LAW GROUP**

By: /s/ Todd D. Carpenter
TODD D. CARPENTER

*Attorneys for Plaintiff*
JAMIE LUMOS and the Class